FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 13

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID and FARIS TAFOYA, husband and wife, | No. 43003-7-II consolidated with No. 43376-1-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON HUMAN RIGHTS COMMISSION, | ORDER AMENDING OPINION |
| Appellant. | |

The opinion previously filed in this case on October 15, 2013, is hereby amended as follows:

Add "the ALJ's decision and remand for further proceedings consistent with this opinion." to the end of the last sentence of the opinion and insert a footnote that reads:

> We note that the Superior Court order modified the amount of actual damages awarded in the ALJ's order. However, the parties do not challenge either the amount of damages in the ALJ's order or the Superior Court's order modifying the amount of actual damages. We do not consider the trial court's action on administrative appeal. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d

68, 77, 11 P.3d 726 (2000). Accordingly, we affirm the ALJ's opinion in its entirety, including the original amount of actual damages awarded by the ALJ.

Accordingly, it is

**SO ORDERED.**

DATED this 13TH day of _NOVEMBER_____, 2013.

_____
DALTON, J.P.T.

We concur:

_____
QUINN-BRINTALL, J.

_____
JOHANSON, A.C.J.

2

FILED
COURT OF APPEALS
DIVISION II

2013 OCT 15 AM 8: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

DAVID and FARIS TAFOYA, husband and wife,

Appellants,

v.

STATE OF WASHINGTON HUMAN RIGHTS COMMISSION,

Respondent.

No. 43003-7-II
consolidated with
No. 43376-1-II

PUBLISHED OPINION

DALTON, J.P.T.[1] — Mary Gossard rented a home from David and Faris Tafoya.[2] After several months of enduring David's sexual comments and inappropriate behavior, Gossard filed a complaint with the Washington State Human Rights Commission (Commission), alleging that the Tafoyas engaged in sexual harassment and retaliation. The Commission filed a formal complaint against the Tafoyas. An administrative law judge (ALJ) found that the Tafoyas violated the Washington Law Against Discrimination (WLAD), RCW 49.60 et seq., by engaging in sex discrimination and retaliation. The Tafoyas appeal arguing that the ALJ's final decision and order (1) misapplies the law and (2) is not supported by substantial evidence. We hold that

---

[1] Judge Jeanette Dalton is serving as a judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

[2] David and Faris Tafoya, collectively, are referred to as "the Tafoyas." When referred to individually, David's and Faris's first names are used for clarity; we intend no disrespect.

the ALJ correctly applied the law and that the findings are supported by substantial evidence, and we affirm.

FACTS

The Tafoyas own property in Thurston County. The property includes the Tafoyas' home and a rental home. A fence separates the Tafoyas' property from the rental property. In March 2006, Gossard and the Tafoyas signed a one-year lease.

David engaged in numerous instances of inappropriate behavior with Gossard during the time she lived in the rental home. The first episode occurred while Gossard was signing the lease: David asked his wife if she would mind if David chased Gossard around the pond on the property. Later, while David was helping Gossard move her piano, he made a comment about women being stupid. David also hugged Gossard and touched her buttocks.

David made several sexually inappropriate comments to Gossard: When Gossard broke her ankle, David brought her dinner and said, "I've seen your pussy."[3] Admin. Record (AR) at 365. After hearing Gossard play the piano, David told Gossard, "'Your piano playing was beautiful. I made love to you several times while I was listening to you. I could even taste you.'" AR at 364. David also called Gossard late at night and asked her to come over to the house and "party." AR at 366. David told Gossard that "some nights he thought about her, watched pornography, and masturbated." AR at 365.

David made several, less explicit comments that made Gossard feel uncomfortable. David told Gossard that he thought about her all the time. He also told Gossard that Faris was going through menopause and they were no longer having sex. AR 365. One night, David called Gossard and told her to come over to his house. Gossard responded that she could not

---

[3] Gossard owns a cat.

2

because she was in her bathrobe. David told her she should just come over in her bathrobe. Gossard refused. After Gossard's friend stayed the night at her house, David made a comment implying that Gossard was a prostitute. Once, David poked her in the stomach and commented that she was "gaining weight and looked like the Pillsbury doughboy."

In addition to his comments, David's behavior made Gossard feel uncomfortable, embarrassed, and afraid. One afternoon, Gossard went to the Tafoyas' house to ask directions to the post office and David answered the door completely nude. Another afternoon,

> [David] invited [Gossard] to see his art in his [recreational vehicle (RV)]. . . .
> Gossard saw that the paintings were of sexual subjects, including [Faris] in a
> bikini touching herself and a woman with her legs spread open. [David] pushed
> . . . Gossard onto the bed and sat down next to her. . . . Gossard left immediately.

AR at 366.

Gossard informed Faris about David's conduct. Faris replied that Gossard's accusations were untrue and that Faris believed it was Gossard who was pursuing David. The Tafoyas called Gossard later and left her a message saying that nothing ever happened. They also accused Gossard of making everything up.

In May 2006, Gossard filed a complaint with the Commission. On June 13, the Commission notified the Tafoyas that it was investigating Gossard's complaint. After the Tafoyas were notified of Gossard's complaint, they treated her differently. David stopped mowing the lawn on the rental property which he had done before Gossard's complaint. David threatened to throw rocks at Gossard's cat, causing Gossard to fear for her cat's safety. David also took down the chicken wire that had been installed on the fence to prevent Gossard's cat from running into the roadway. The Tafoyas also contacted Gossard's ex-husband to obtain information about Gossard to present to the Commission, despite Gossard's earlier

3

admonishment against contacting her ex-husband.[4] In August 2006, Gossard found a new place to rent and moved out of the Tafoyas' rental home.

The Commission investigated Gossard's complaint and filed an amended complaint, charging the Tafoyas with engaging in unfair practices in a real estate transaction. Specifically, the Commission alleged the Tafoyas committed unfair practices by

> (1) subjecting Gossard to sexual harassment; (2) failing to take action designed to end the sexual harassment; (3) coercing, intimidating, threatening, and interfering with Gossard's attempts to exercise and enjoy her fair housing rights; (4) coercing, intimidating, threatening, and interfering with Gossard's attempts to oppose other unfair practices described herein; and (5) aiding and assisting each other in perpetuation of the other unfair practices described herein.

AR at 5. A four-day administrative hearing was held in August 2010.

Gossard testified to the above facts at the administrative hearing. Some of the Tafoyas' former tenants testified that David had also engaged in similarly inappropriate behavior during their tenancies. The Tafoyas denied Gossard's accusations or, alternatively, argued that David's actions were not "sufficiently severe so as to constitute discrimination by sexual harassment." AR at 377.

The ALJ found that Gossard's testimony was credible and the "Tafoyas' denials and descriptions of the incidents [we]re not credible." AR at 377. The ALJ concluded that the Tafoyas engaged in sex discrimination by sexual harassment and Faris aided and abetted David's sexual harassment of Gossard. The ALJ also concluded that that Tafoyas engaged in retaliatory acts by threatening Gossard's cat and contacting her ex-husband.

---

[4] At the time she rented the property, Gossard told the Tafoyas that she had a protection order against her ex-husband because he was abusive. She specifically asked the Tafoyas not to "disclose any information to anyone about [her] living situation, as [she] wanted to keep it private due to the fact that [she] knew that [her] ex-husband could find out and possibly hurt [her]." Admin. Report of Proceedings at 51.

The ALJ ordered the Tafoyas to cease and desist from engaging in unfair practices by sexually harassing female tenants or retaliating against persons who file discrimination complaints. AR 390. The ALJ awarded Gossard actual damages in the amount of $3,422.75, $10,000.00 in compensatory damages for "humiliation and emotional distress," and imposed a civil penalty of $10,000.00.

The Tafoyas appealed to the Thurston County Superior Court. The superior court reduced Gossard's damages to $3,114.75, but affirmed the ALJ's final decision in all other respects. The Tafoyas timely appeal.

## ANALYSIS

The Administrative Procedure Act (APA), RCW 34.05 et seq, governs our review of agency action. The party seeking relief bears the burden of demonstrating the invalidity of the agency action. RCW 34.05.570(1)(a). We may reverse an agency action if the agency erroneously interpreted or applied the law, or the order is not supported by substantial evidence. RCW 34.05.570(3)(d)-(e).

"We apply the APA's standards directly to the agency record, sitting in the same position as the superior court." *Timberlane Mobile Home Park v. Human Rights Comm'n ex rel. Campbell*, 122 Wn. App. 896, 900, 95 P.3d 1288 (2004) (citing *Burnham v. Dep't of Soc. & Health Servs.*, 115 Wn. App. 435, 438, 63 P.3d 816 (2003)). We review findings of fact for substantial evidence. *Timberlane*, 122 Wn. App. at 900. "An agency order is supported by substantial evidence if there is 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 6, 256 P.3d 339 (2011) (internal quotations omitted) (quoting *Thurston County v. W. Wash.*

5

*Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008)). We review conclusions of law de novo. *Timberlane*, 122 Wn. App. at 900.

UNFAIR PRACTICES IN REAL ESTATE TRANSACTIONS

The ALJ concluded that the Tafoyas engaged in unfair real estate practices under the WLAD. The Tafoyas appear to argue that the ALJ misinterpreted and misapplied the law because (1) they did not violate the plain language of the statute because they rented the property to Gossard and did not prevent her from using it, and (2) David's conduct was not sufficiently severe or pervasive to be considered sexual harassment. We hold that the ALJ properly concluded that sexual harassment by a landlord toward a tenant is discriminatory conduct that interferes with the terms, conditions, or privileges associated with renting property and David's conduct constituted sexual harassment in violation of the WLAD.

RCW 49.60.030 guarantees the right to be free from discrimination because of sex. The right to be free from discrimination includes "the right to engage in real estate transactions without discrimination." RCW 49.60.030(1)(c). It is an unfair practice "to discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith" or '[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling, to any person." RCW 46.60.222(1)(b), (f). A "real estate transaction" includes the rental or lease of real property. Former RCW 49.60.040(21) (1997). The WLAD should be construed broadly. *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 214, 87 P.3d 757 (2004) (citing *Marquis v. City of Spokane*, 130 Wn.2d 97, 109, 922 P.2d 43 (1996)).

There are no Washington cases that address sexual harassment as an unfair practice in real estate transactions under the WLAD. But there is significant federal authority that (1)

6

establishes sexual harassment as a form of discrimination in housing and (2) provides the legal standard for determining whether sexual harassment has occurred. Similar to the WLAD, the Fair Housing Amendments Act (FHAA), 42 U.S.C. chapter 45, prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling" based on sex. 42 U.S.C. § 3604(b). The FHAA also prohibits making a dwelling unavailable because of sex. 42 U.S.C. § 3604(a). "[T]he language of the [FHAA] is 'broad and inclusive' and must be given a 'generous construction.'" *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1234 (D.C. Cir. 1997) (quoting *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209, 212, 93 S. Ct. 364, 366-67, 368, 34 L. Ed. 2d 415 (1972)). When interpreting Washington law, we may look to the federal case law when a federal anti-discrimination law contains the same protections and mandates the same broad construction. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 376, 610 P.2d 857, 621 P.2d 1293 (1980).

The Tafoyas assert that "[t]here is no issue concerning the fact that Gossard obtained possession of the rental area and resided upon it." Br. of Appellant at 22. The Tafoyas argue that the WLAD should be narrowly read so that unfair practices in a real estate transaction are limited to unfair practices in entering into a lease or rental agreement and do not extend to actions during the term of the tenancy. Relying on their narrow reading of the WLAD, the Tafoyas assert that they did not engage in an unfair practice at the time they entered into the original rental agreement with Gossard.

But the Tafoyas ignore several federal cases that recognize sexual harassment as a form of discrimination in the terms, conditions, or privileges of renting property. *U.S. v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) ("Sexual harassment is actionable under the FHA[A]."); *see also Quigley v. Winter*, 598 F.3d 938, 946 (8th Cir. 2010); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008

7

(7th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085, 1088-90 (10th Cir. 1993). Washington courts have similarly recognized the necessity of construing the WLAD broadly to affect the legislative purpose of the WLAD: to eliminate and prevent discrimination in real estate transactions based on sex. RCW 49.60.010; *Blaney*, 151 Wn.2d at 214. Indeed, the legislature has explicitly found that "discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundations of a free democratic state." RCW 49.60.010. Under the Tafoyas narrow construction of the WLAD, there would be no claim for discrimination as long as a tenant is not sexually harassed until after she has rented property and resided on it. The Tafoyas' would create an absurd result which could not have been intended by the legislature and clearly defies the mandate to construe the WLAD broadly to prevent discrimination. *Dep't of Ecology v. Tiger Oil Corp.*, 166 Wn. App. 720, 762, 271 P.3d 331 (2012) (citing *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987)). Accordingly, we reject Tafoyas argument and hold that sexual harassment is an unfair practice in a real estate transaction and is actionable under the WLAD.

Alternatively, the Tafoyas argue that if a sexual harassment claim exists, David's conduct did not constitute sexual harassment that is pervasive enough to create a hostile environment. Federal courts have determined that the sexual harassment must be unwelcome and "sufficiently severe or pervasive so as to interfere with or deprive [the tenant] of her right to use or enjoy her home." *Quigley*, 598 F.3d at 946-47 (citing *DiCenso*, 96 F.3d at 1008). The WLAD prohibits discrimination against a person in terms, conditions, or privileges of a real estate transaction. RCW 46.60.222(1)(b). The use and enjoyment of a rental home is inherent in the terms, conditions, or privileges of the rental agreement.

Where there is not an established standard for establishing discrimination in a certain context, we will often rely on the standards from employment discrimination cases. For example, in *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 632, 911 P.2d 1319 (1996), our Supreme Court, to ascertain whether there was discrimination against the disabled in places of public accommodation, used the standards for determining whether an employer discriminated against the disabled in the workplace. . The ALJ relied on the test for sexual harassment in employment our Supreme Court set out in *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985). Under *Glasgow*, the four necessary elements of a sexual harassment claim are: (1) the harassment was unwelcome, (2) the harassment was because of sex, (3) the harassment affected the terms and conditions of employment, and (4) the harassment was imputed to the employer. 103 Wn.2d at 406-07. Because Washington's test for sexual harassment in employment discrimination encompasses the federal requirements for sexual harassment in housing, the ALJ properly applied the *Glasgow* four-part test to determine whether a tenant has established sexual harassment in housing.

Using the *Glasgow* analytical framework, the Commission would have to prove that (1) David's conduct was unwelcome, (2) David's conduct was because of Gossard's sex, (3) David's conduct affected the terms, conditions, and privileges of the rental property (including Gossard's use and enjoyment of the property), and (4) the harassment was imputable to the landlord. The Tafoyas do not argue that David's conduct was welcome or that it was unrelated to Gossard's sex. The Tafoyas limit their argument to whether David's conduct was sufficiently severe and pervasive so as to affect Gossard's use and enjoyment of the rental property.

The Tafoyas characterize David's conduct as isolated or trivial. We agree with the ALJ that David's conduct was sufficiently severe to establish sexual harassment. The ALJ's findings

9

of fact identify at least 14 instances of inappropriate behavior by David, including physical touching and sexually explicit comments. Gossard testified that David's conduct made her feel embarrassed, uncomfortable, and afraid when she was in her home. David's conduct was not isolated or trivial. To the contrary, his conduct was a regular occurrence while Gossard lived on the property. David made several sexually explicit comments including one comment in which he stated that he "made love to [her] several times" and another comment in which he stated he thought about her while he masturbated. AR at 364. David answered the door while naked, and he pushed Gossard onto the bed in an RV filled with his sexually explicit art.

Although not binding, the Eighth Circuit's decision in *Quigley v. Winter* is factually on-point and persuades us. In *Quigley*, the tenant testified that her landlord:

> subjected her to unwanted touching on two occasions, made sexually suggestive comments, rubbed his genitals in front of her, placed several middle of the night phone calls to her home, made repeated unannounced visits, and, on one occasion, while [the landlord] lay on [the tenant's] couch, had to be told to leave her home at least three times before he complied.

598 F.3d at 947. Based on this testimony, the court concluded the tenant "presented sufficient evidence of numerous unwanted interactions of a sexual nature that interfered with [the tenant]'s use and enjoyment of her home." *Quigley*, 598 F.3d at 947. Gossard experienced similar unwanted, sexual conduct on numerous occasions. As in *Quigley*, there were numerous incidents of such conduct. Accordingly, the ALJ did not err by concluding that David's conduct was sufficiently severe and pervasive so as to interfere with Gossard's use and enjoyment of the rental property. The final element of a sexual harassment claim is whether the conduct can be imputed to the landlord. Here, David was the landlord and directly participated in the conduct. Therefore, he is liable and imputation is unnecessary.

Faris argues that she cannot be held liable for David's conduct because she had very little first-hand knowledge of the situation and did not have very much contact with Gossard. But Faris misunderstands the law. She relies on principles of joint and several tort liability against the marital community to support her argument. But the ALJ did not impose liability on Faris by virtue of the marital community. Instead, Faris is liable for discrimination by virtue of her position as a landlord.

In the employment context, liability is imputed to the employer when the employer either participates in the harassment or the employer knew or should have known of the harassment and failed to take remedial action. *Glasgow*, 103 Wn.2d at 407. Here, Gossard told Faris about David's conduct, but Faris failed to investigate or take any remedial action. To the contrary, Faris accused Gossard of initiating the contact with David and participated in the retaliation by contacting Gossard's ex-husband. The purpose of imputing liability is to ensure that landlords investigate complaints and take appropriate action to stop harassment. A landlord cannot avoid imputed liability by simply choosing to ignore a tenant's complaint. We hold that the ALJ properly imposed liability on both David and Faris.[5]

FIRST AMENDMENT

The Tafoyas also argue that the ALJ erred by concluding that David's comments were not protected by the First Amendment. But it is well-established that speech that constitutes harassment is unprotected speech. Accordingly, the ALJ did not err in rejecting this meritless argument.

---

[5] We also note that Faris is directly liable for her retaliatory conduct, specifically, her direct participation in contacting Gossard's ex-husband.

No. 43003-7-II, consolidated with No. 43376-1-II

In *Mills v. W. Wash. Univ.*, 150 Wn. App. 260, 274, 208 P.3d 13 (2009), *rev'd on other grounds*, 170 Wn.2d 903, 246 P.3d 1254 (2011), Division One of this court stated:

> To be explicit, none of the following behaviors implicate academic freedom in the slightest, *or are protected by either the First Amendment or article 1, section 5*: verbally abusing faculty colleagues with discriminatory and sexual innuendo; harassing, intimidating, demeaning, and insulting students outside of the classroom; [and] verbally abusing staff members and student assistants serving in an administrative capacity.

(Emphasis added.) Here, David's speech can be characterized as discriminatory, sexually explicit or sexual innuendo, and harassing. Under *Mills*, this type of speech is not protected speech. As the Commission correctly points out, the case law governing harassing and discriminatory speech is clear that David's comments are not protected speech.[6] Therefore, the ALJ did not err in concluding that David's comments were not protected by the First Amendment.

EVIDENCE OF EMOTIONAL DISTRESS

Finally, the Tafoyas argue that the ALJ's findings regarding Gossard's emotional distress are not supported by substantial evidence. Specifically, the Tafoyas argue that the ALJ cannot award damages for emotional distress without the testimony of a licensed medical professional. But the Tafoyas rely on cases regarding the sufficiency of the evidence supporting tort claims for negligent infliction of emotional distress which are inapplicable to sexual harassment claims. We reject the Tafoyas argument and hold that the ALJ properly awarded damages authorized by the WLAD.

---

[6] The Tafoyas base their argument on cases addressing criminal statutes meant to punish speech — speech categorized as fighting words. David's speech is not categorized as fighting words; therefore, the cases cited by the Tafoyas are inapplicable.

12

RCW 49.60.225(1) authorizes the ALJ to award any damages "for such relief suffered by the aggrieved person" and damages authorized by the FHAA. Federal courts have held that "emotional distress caused by housing discrimination is a compensable injury under the [FHAA]." *U.S. v. Balistrieri*, 981 F.2d 916, 931 (7th Cir. 1992) (citing *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636-38 (7th Cir. 1974)). But emotional distress will not be presumed; the plaintiff must prove that the discrimination caused actual emotional distress. *Balistrieri*, 981 F.2d at 931 (citing *Carey v. Piphus*, 435 U.S. 247, 263-64, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)). If the plaintiff's testimony "'reasonably and sufficiently'" explains the emotional distress, the plaintiff's testimony is sufficient to support the award of damages. *Balistrieri*, 981 F.3d at 931-32 (internal quotations omitted) (quoting *Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990)). Similarly, we have held that "[a] discrimination plaintiff may seek monetary compensation for 'actual damages,' including distress and mental anguish caused by discrimination, and may prove such damages through nonexpert testimony." *Negron v. Snoqualmie Valley Hosp.*, 86 Wn. App. 579, 588, 936 P.2d 55 (1997) (quoting former RCW 49.60.030(2) (1995)) (citing *Delahunty v. Cahoon*, 66 Wn. App. 829, 842, 832 P.2d 1378 (1992)).

The Tafoyas' argument that Gossard was required to support her testimony with expert medical testimony is contrary to existing case law. *See Negron*, 86 Wn. App. at 588. Gossard's testimony sufficiently explains the emotional distress that she suffered because of David's sexual harassment, thus there is substantial evidence to support the ALJ's award of damages. *Balistrieri*, 981 F.3d at 931. Here, Gossard testified that David's behavior made her fearful for her safety and the safety of her cat. Gossard participated in therapy to deal with the situation. And Gossard testified, "I was put under a lot of stress in my education. I was gaining weight. I

13

was not sleeping. I was afraid. I was feeling invalidated. I was humiliated. I was subjugated (sic) to things that nobody should be subjugated to, making it very stressful."[7] Admin. Report of Proceedings at 130. Gossard's testimony establishes that she suffered emotional distress because of David's conduct, which embarrassed and humiliated her and made her afraid in her own home. Therefore, substantial evidence supports the ALJ's damages award for emotional distress.

In sum, the Tafoyas' arguments regarding the substantive nature of the claims are untenable. We hold that as a matter of law, sexual harassment is an actionable claim under the WLAD when the sexual harassment interferes with the terms, conditions, and privileges of a rental agreement by preventing the use and enjoyment of property. The proper standard for evaluating a claim for sexual harassment is the standard our Supreme Court articulated for sexual harassment in employment in *Glasgow*. The ALJ did not misinterpret or misapply the law when she concluded that the Tafoyas violated the WLAD by discriminating against Gossard based on her sex. And, because liability may be imputed to a landlord who fails to take reasonable investigative and/or remedial action after receiving a harassment complaint, the ALJ did not err by imposing liability on Faris for David's sexual harassment of Gossard. In addition, the Tafoyas' claims that David's conduct is protected by the First Amendment and that Gossard was required to produce expert testimony to support her claim for emotional distress are contrary to

---

[7] Subjugate means "to bring or hold under strict control or into a subordinate position." WEBSTER'S THIRD INTERNATIONAL DICTIONARY, at 2276 (1969).

14

No. 43003-7-II, consolidated with No. 43376-1-II

Washington law.

    We affirm.

                                                     _____
                                                     DALTON, J.P.T.

We concur:

_____
QUINN-BRINTNALL, J.

_____
JOHANSON, A.C.J.

15