

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 3 1 2019
[signature]
CHIEF JUSTICE

This opinion was filed for record

at 8 a.m. on Jan, 31, 2019

[signature]

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHRISTOPHER H. FLOETING, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | No. 95205-1 |
| v. | ) | |
| | ) | En Banc |
| GROUP HEALTH COOPERATIVE, | ) | |
| | ) | |
| Petitioner. | ) | Filed JAN 3 1 2019 |

GONZÁLEZ, J.—The Washington Law Against Discrimination (WLAD) makes it unlawful for "any person or the person's agent or employee to commit an act [of] discrimination . . . in any place of public . . . accommodation." RCW 49.60.215. Christopher Floeting alleges that a Group Health Cooperative employee repeatedly sexually harassed him while he was seeking medical treatment. Sexual harassment is a form of sex discrimination. Group Health argues that we should import workplace sexual harassment doctrines into the public accommodations context, categorically limiting employer liability. We decline to do so and affirm.

BACKGROUND

Floeting had been a member and patient of Group Health, a nonprofit health care system, for over 35 years. Group Health is a place of public accommodation. Floeting alleges that beginning in July 2012, he was repeatedly sexually harassed by a Group Health employee during his regularly scheduled medical appointments. He filed a complaint with Group Health, and Group Health investigated. Two weeks later, Group Health terminated the employee.

Floeting sued Group Health for the unwelcome and offensive sexual conduct he experienced. The trial court dismissed his claim on summary judgment, presumably pursuant to Group Health's argument that the employment discrimination standard applies.[1] The Court of Appeals reversed. *Floeting v. Grp. Health Coop.*, 200 Wn. App. 758, 403 P.3d 559 (2017). We granted review. *Floeting v. Grp. Health Coop.*, 190 Wn.2d 1007 (2018).

ANALYSIS

Group Health challenges employer liability for the discriminatory actions of its agents and employees and challenges the legal test used by the Court of

---

[1] The trial judge did not explain his reasoning. As it does here, Group Health argued that *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985), should control. In other words, Group Health asserts that an employer is not liable for the discriminatory conduct of its employee if it did not know about the conduct.

Appeals. We decline to import doctrines developed for the employment context into the public accommodations context. We hold that under the plain language of WLAD, employers are directly liable for the sexual harassment of members of the public by their employees, just as they would be if their employees turned customers away because of their race, religion, or sexual orientation.

Since both of Group Health's challenges present questions of law, our review is de novo. *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002) (citing *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001)). When reviewing a statute, the court will give effect to the statute's plain language. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In determining if the statute is plain, we will consider the ordinary meaning of words, basic rules of grammar, and statutory context. *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 435, 359 P.3d 753 (2015).

The legislature has declared "that practices of discrimination . . . threaten[ ] not only the rights and proper privileges of [Washington's] inhabitants but menace[ ] the institutions and foundation of a free democratic state." RCW 49.60.010. The legislature has also directed us to liberally construe WLAD to eradicate discrimination, including discrimination in places of public accommodation. RCW 49.60.010, .020; *see also Jin Zhu v. N. Cent. Educ. Serv.*

3

*Dist.-ESD 171*, 189 Wn.2d 607, 614, 404 P.3d 504 (2017) (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 108, 922 P.2d 43 (1996)).

Under RCW 49.60.030(1)(b), WLAD secures the right to "full enjoyment" of any place of public accommodation, including the right to purchase any service or commodity sold by any place of public accommodation "without acts directly or indirectly causing persons of [a protected class] to be treated as not welcome, accepted, desired, or solicited." *See* RCW 49.60.040(14). Similarly, WLAD prohibits "any person or the *person's agent or employee* [from committing] an act which directly or indirectly results in any distinction, restriction, or discrimination" based on a person's membership in a protected class. RCW 49.60.215 (emphasis added). This broad standard focuses the liability inquiry on whether *actions* resulted in discrimination, not whether the proprietor of a place of public accommodation intended to discriminate.

Floeting alleges a Group Health employee sexually harassed him. Sexual harassment is a form of sex discrimination, which we analyze like other forms of discrimination in places of public accommodation. *See* Dana E. Blackman, *Refusal To Dispense Emergency Contraception in Washington State: An Act of Conscience or Unlawful Sex Discrimination?*, 14 MICH. J. GENDER & L. 59, 72 (2007) ("absent distinguishing factors, the various protected classes should be

treated similarly under the law"); *cf. Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986).

More than twenty years ago, we set forth the standard for establishing a prima facie case of discrimination in a place of public accommodation under RCW 49.60.215. *See Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 637, 911 P.2d 1319 (1996).[2] *Fell* established that in order to make a prima facie case of discrimination under RCW 49.60.215, a plaintiff must prove that (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination. *Id.*; *see also Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 525, 20 P.3d 447 (2001) (applying same analytical framework). In all the time since, the legislature has not seen fit to amend WLAD to impose a different standard on claims of discrimination in places of public accommodation.

Instead of the traditional public accommodation claims test, Group Health argues that the framework developed to analyze sex discrimination committed by an employee against a coworker should apply. In the employment context, a

---

[2] Group Health argues that *Fell* does not control because the discrimination in that case was not by a nonsupervisory employee, but the plain language of WLAD does not make this distinction.

plaintiff alleging workplace sexual harassment must show (1) the conduct was unwelcome, (2) the conduct was because of sex, (3) the conduct affected the terms or conditions of employment, and (4) the harassment can be imputed to the employer because the employer (i) authorized, knew of, or should have known of the harassment and (ii) failed to take reasonably prompt and corrective action. *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985) (holding sexual harassment deprived plaintiff of a workplace free of sex discrimination).

Group Health argues that the *Glasgow* employment discrimination standard "applies seamlessly" and therefore it should apply. Pet. for Review at 10. It also suggests that if we do not apply the agency principles articulated in *Glasgow*, we would be creating a "double standard" whereby sexual harassment claims are treated differently in different contexts. *Id.* at 14-15. Group Health also argues that the Court of Appeals incorrectly imposed a standard that rejects consideration of severity or pervasiveness of the treatment. *Id.* at 15.

But we treat employment discrimination claims differently from public accommodation discrimination claims because WLAD treats them differently. An employee alleging employment discrimination must show that the misconduct affected the "terms or conditions of [their] employment." RCW 49.60.180(3); *Glasgow*, 103 Wn.2d at 405-06. The employment discrimination statute is limited to unfair practices by an "employer" by operation of the language "It is an unfair

practice for any employer[ ] [t]o . . . ." RCW 49.60.180. In contrast, WLAD

provisions prohibiting discrimination in a public accommodation do not limit

themselves to the "terms or conditions" of a public accommodation. *See* RCW

49.60.215. Discrimination by "any person or the person's agent or employee" is

an unfair practice in a public accommodation, *id.*; in this context, the person

subject to WLAD broadly includes, among others, individuals, corporations,

owners, proprietors, managers, and employees. RCW 49.60.040(19). Floeting's

claim is more of a consumer claim than a claim between an employee and

employer, and his claim is not limited by the employment discrimination statute.

WLAD protects the customer's "full enjoyment" of the services and

privileges offered in public accommodations. RCW 49.60.030(1)(b). WLAD's

broad definition of "full enjoyment" extends beyond denial of service to include

liability for mistreatment that makes a person feel "not welcome, accepted, desired,

or solicited." RCW 49.60.040(14). Denial or deprivation of services on the basis

of one's protected class is an affront to personal dignity. *See Obergefell v. Hodges*,

__ U.S. __, 135 S. Ct. 2584, 2604, 2607-08, 192 L. Ed. 2d 609 (2015) (denial of

marriage equality works a "grave and continuing harm"). The "fundamental

object" of laws banning discrimination in public accommodations is "to vindicate

'the deprivation of personal dignity that surely accompanies denials of equal access

to public establishments.'" *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S.

7

241, 250, 85 S. Ct. 348, 13 L. Ed. 2d 258 (1964) (quoting S. REP. NO. 88-872, at 16-17 (1964)).[3]

WLAD makes it unlawful for "any person or the person's agent or employee to commit an act" of, among other things, discrimination in a place of public accommodation. RCW 49.60.215. This provision imposes direct liability on employers for the discriminatory conduct of their agents and employees. We can say it no better than the Court of Appeals:

> It is an unfair practice for "any person or the person's agent or employee" to commit a forbidden act. RCW 49.60.215(1). This language attributes responsibility for the agent's or employee's discriminatory act to the "person" (employer) without mention of the doctrines of vicarious liability or respondeat superior. In this way, the legislature chose to fight discrimination in public accommodations by making employers directly responsible for their agents' and employees' conduct.

*Floeting*, 200 Wn. App. at 770. Grafting *Glasgow*'s rule imputing liability to an employer only where the employer "authorized, knew, or should have known" of the discriminatory conduct and "failed to take reasonably prompt and adequate corrective action," 103 Wn.2d at 407, would significantly undermine the legislature's clear language. It is the province of the legislature to establish

---

[3] Amici universities are concerned about the State's obligation to protect free speech and academic freedom. This is an interesting and important issue, especially when the place of public accommodation is provided by the government, which is not the case here. No party has raised the issue, and we decline to speculate about it. We note, however, that sexual harassment, as defined for purposes of the Washington Law Against Discrimination, is not protected speech. *Tafoya v. Human Rights Comm'n*, 177 Wn. App. 216, 229, 311 P.3d 70 (2013).

standards of conduct and attendant rules of liability, and the legislature determined direct liability is appropriate here. *See, e.g., United States v. Park*, 421 U.S. 658, 672-73, 95 S. Ct. 1903, 44 L. Ed. 2d 489 (1975) (Congress imposed heightened standard of care on food sellers, even where no awareness of wrongdoing); *cf. Anderson v. Pantages Theatre Co.*, 114 Wash. 24, 29, 194 P. 813 (1921).

Group Health contends that it should not be held liable for "unforeseeable acts of an employee." Suppl. Br. of Pet'r at 16. But RCW 49.60.215 is not a negligence statute where foreseeability matters; it imposes direct liability for discriminatory acts, regardless of the culpability of the actor. Group Health also contends that we should apply a different standard to the acts of frontline employees than we do to supervisors. Nothing in the text of WLAD supports that approach. "'[A] rule that only actions by supervisors are imputed to the employer would result, in most cases, in a no liability rule.'" Br. of Amici Curiae Legal Voice & Korematsu Center at 11 (quoting *Arguello v. Conoco, Inc.*, 207 F.3d 803, 810 (5th Cir. 2000)).[4] This would not be consistent with the legislature's express directions.

---

[4] *Arguello* concerns a claim of public accommodations discrimination under the federal civil rights statute 42 U.S.C. § 1981 and § 2000a. *Arguello*, 207 F.3d at 808-09. Title II of the Civil Rights Act of 1964 does not refer to the "person" who may be liable or contain a relevant definition. For this reason, liability under federal law is usually limited to instances where the common law doctrines of vicarious liability or respondeat superior impose liability. Unlike federal law, the comprehensive language in WLAD supports a reading of both direct and vicarious liability. *See* RCW 49.60.215.

Group Health suggests we should apply an agency or vicarious liability lens to employer liability for employee conduct under RCW 49.60.215. This would require us to ignore both the plain language of the statute and the larger statutory scheme. The statute makes it unlawful for "any person or the person's agent or employee to commit an act [of] discrimination . . . in any place of public . . . accommodation." RCW 49.60.215. Of the fourteen "unfair practices" provisions under WLAD, employers are directly liable for the acts of employees in only two instances: (1) the relevant public accommodations provision here and (2) the provision making discrimination against persons with disabilities who use service animals unlawful, RCW 49.60.218. These provisions' direct liability language stands in contrast to the other dozen provisions. *See* Br. of Amici Curiae Legal Voice & Korematsu Center at 7-8 (collecting statutes). All provisions target "unfair practices" but are defined in a context specific manner. There is no statutory support for the argument that an employer must know about the discrimination or have an opportunity to take corrective action before liability may be imposed. *See generally Tafoya v. Human Rights Comm'n*, 177 Wn. App. 216, 224, 311 P.3d 70 (2013) (applying *Glasgow*'s employment standard to housing context because the statutes in those contexts were similar).

Group Health also argues that we should adopt *Glasgow*'s "severe" or "pervasive" requirement for sexual harassment claims in places of public

10

accommodation. Suppl Br. of Pet'r at 17. We decline to do so. There is no statutorily required pervasiveness or severity requirement for discriminatory conduct in the public accommodations context. *See* ch. 49.60 RCW.[5] A single discriminatory act in a place of public accommodation may violate WLAD. *See, e.g., King v. Greyhound Lines, Inc.*, 61 Or. App. 197, 199-201, 656 P.2d 349 (1982) (interpreting a provision similar to the WLAD and holding bus company liable for an employee's use of two racial slurs toward a customer); *accord Evergreen Sch. Dist. No. 114 v. Wash. State Human Rights Comm'n*, 39 Wn. App. 763, 774, 695 P.2d 999 (1985).

We agree with the Court of Appeals when it noted:

> To be actionable, the asserted discriminatory conduct must be *objectively discriminatory.* By this we mean that it must be of a type, or to a degree, that a reasonable person who is a member of the plaintiff's protected class, under the same circumstances, would feel discriminated against (as described in subsections [RCW 49.60].040(14) and .215(1)). *This is an objective standard.*

*Floeting*, 200 Wn. App. at 773-74 (emphasis added). This is the reasonable person test applied in the public accommodations context. *See generally State v. Trey M.*, 186 Wn.2d 884, 888, 383 P.3d 474 (2016) (describing the "reasonable person" standard).

---

[5] Other jurisdictions have similarly declined to apply employment discrimination standards where irrelevant and inapplicable. *See, e.g., City of Minneapolis v. Richardson*, 307 Minn. 80, 86-87, 239 N.W.2d 197 (1976); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257-58 (4th Cir. 2001).

That said, we stress that plaintiffs must show more than "'mere rhetoric that is subjectively offensive.'" *Floeting*, 200 Wn. App. at 773 (quoting *Evergreen Sch. Dist.*, 39 Wn. App. at 772-73); *see also Kahn v. Salerno*, 90 Wn. App. 110, 118, 951 P.3d 321 (1998) ("Laws against discrimination are 'not directed against unpleasantness *per se*.'" (quoting *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1145 (7th Cir. 1997))). But taking his allegations as true, as we must at this stage, Floeting alleged more than subjectively offensive rhetoric from Group Health's employee. He alleged that he "objectively received substandard treatment." Clerk's Papers at 390. Repeated, express, and outrageous sexual harassment, as alleged here, satisfies the objective standard.

The test we adopt imposes strict liability to the extent it does not allow an employer to escape liability by asserting a lack of fault. According to *Black's Law Dictionary*, "strict liability" is "[l]iability that does not depend on proof of negligence or intent to do harm but that is based instead on a duty to compensate the harms proximately caused by the activity or behavior subject to the liability rule." BLACK'S LAW DICTIONARY 1055 (10th ed. 2014). In this case, Group Health will be liable if its employee caused the harm prohibited by the statute, even if it did not participate in the discrimination and was not negligent in training or supervising its employees. Therefore, Group Health is subject to strict liability for the discriminatory conduct of its employee in a place of public accommodation.

The statute's current language requires this reading. RCW 49.60.215 states, "It shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in . . . discrimination" on the basis of sex. The statute already holds agents and employees liable for their own actions by virtue of how it defines "person":

> "Person" includes one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, manager, *agent, or employee*, whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of any political or civil subdivision thereof.

RCW 49.60.040(19) (emphasis added). We therefore must interpret "any person or the person's agent or employee" to mean something more than that each person is liable for their own actions. *See State v. Roggenkamp*, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) ("'each word of a statute is to be accorded meaning'" (quoting *State ex rel. Schillberg v. Barnett*, 79 Wn.2d 578, 584, 488 P.2d 255 (1971))); *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000) ("'[T]he drafters of legislation . . . are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute.'" (second alteration in original) (quoting *Greenwood v. Dep't of Motor Vehicles*, 13 Wn. App. 624, 628, 536 P.2d 644 (1975))); *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) ("'Statutes must be interpreted and construed so that

all the language used is given effect, with no portion rendered meaningless or superfluous.'" (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999))). Reading the statute to make employers liable for the actions of their employees in this context, even when the employer itself is not at fault, has this effect.

The dissent argues that if we read RCW 49.60.215 to impose strict liability, then we must also apply strict liability to RCW 49.60.180(3), the employment discrimination statute, because the latter statute "clearly states employers will be liable for discrimination occurring in the terms or conditions of employment." Dissent at 7. This is incorrect. RCW 49.60.215 states that it is an unfair practice for "any person or the person's agent or employee" to discriminate, while RCW 49.60.180(3) imposes liability only on an *employer* who discriminates. RCW 49.60.180(3) does not directly impose liability for the actions of the employer's agents and employees ("It is an unfair practice for any employer. . . [t]o discriminate against any person in compensation or in other terms or conditions of employment."). Because RCW 49.60.180(3) prohibits only the employer itself from discriminating, it requires a showing of fault by the employer if the discrimination was perpetuated by an *employee*. The same is not true of RCW 49.60.215.

The dissent is concerned that strict liability would do little to eradicate discrimination because employers could not escape liability by showing that they acted diligently to prevent and remedy the discrimination. However, if employers know that the only way they can prevent lawsuits is by preventing their employees from discriminating at all, they will try even harder to make sure that their employees are well trained, are well supervised, and do not discriminate. In addition, it gives employers an incentive to end any alleged discrimination as soon as possible, limiting their exposure to damages. This will encourage employers to focus on preventing discrimination, rather than merely punishing employees when it occurs. Prevention will better further the legislative goal of eradicating discrimination in places of public accommodation.

Finally, an employer will still have some defenses available. An employer could still argue to the jury, for example, that the discrimination did not happen at all, that it did not meet the objective or subjective standards required by the statute and therefore was not an unfair practice, or that the person who committed the discrimination was not its agent or employee. What strict liability does preclude are claims that an employer is not liable because it was not negligent and did not intend to do harm. RCW 49.60.215 imposes strict liability on employers for the actions of their employees.

CONCLUSION

Under the plain language of WLAD, employers are liable for their employees' discriminatory conduct toward a customer in a place of public accommodation. The *Glasgow* standard does not apply to claims of discrimination in places of public accommodation. We affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

González, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Madsen, J.

*Floeting v. Grp. Health Coop.*

No. 95205-1

MADSEN, J. (dissenting)—I disagree with the majority's holding that workplace harassment doctrines do not apply in places of public accommodation. I see no reason to treat instances of discrimination differently, nor do I believe the legislature intended to distinguish them—their intent is to eradicate discrimination wherever it occurs. I write separately because the majority erroneously subjects employers to a strict liability standard for the discriminatory actions of nonsupervisory employees—a far higher standard than in the workplace setting—without justification and based on language that does not support such a result. Instead of imposing a duty on business owners to take action when they know, or should know, of discriminating conduct by an employee, the majority's strict vicarious liability standard makes business owners guarantors of their employees' behavior. This court rejected the duty to maintain a "pristine working environment"[1] in the context of workplace harassment in favor of a more balanced, workable approach, holding employers vicariously liable when they know, or should know, of the discriminatory behavior. We should adopt that same balanced approach with public accommodation discrimination.

---

[1] *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985) (quoting *Cont'l Can Co. v. State*, 297 N.W.2d 241, 249 (Minn. 1980)).

Discussion

We have held that the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, provides protections against sexual harassment, as it is a form of sex discrimination. *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985) ("Sexual harassment as a working condition unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace.").

Indeed, the WLAD is clear that "[t]he right to be free from discrimination because of . . . sex . . . is recognized as and declared to be a civil right." RCW 49.60.030(1). It also establishes that

> [i]t shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in any distinction, restriction, or discrimination, or the requiring of any person to pay a larger sum than the uniform rates charged other persons, or the refusing or withholding from any person the admission, patronage, custom, presence, frequenting, dwelling, staying, or lodging in any place of public . . . accommodation, . . . except for conditions and limitations established by law and applicable to all persons, regardless of . . . sex.

RCW 49.60.215(1). While we have decided cases that involve sexual harassment in the workplace and discrimination in places of public accommodation, we have not had occasion to determine what legal standard is appropriate for imposing liability on a proprietor of a place of public accommodation for alleged sexual harassment by a nonsupervisory employee.

In *Glasgow*, we held that a claim for sexual harassment in the workplace requires the employee to establish four elements:

2

> (1) *The harassment was unwelcome.* . . . (2) *The harassment was because of sex.* . . . (3) *The harassment affected the terms or conditions of employment.* . . . (4) *The harassment is imputed to the employer.*

103 Wn.2d at 406-07 (emphasis added) (formatting omitted). To determine whether the harassment can be imputed to the employer, we stated:

> Where an owner, manager, partner or corporate officer personally participates in the harassment, this element is met by such proof. To hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.

*Id.* at 407. In other words, unless the employer knew of, should have known of, or participated in the alleged sexual harassment, it will not be liable for a nonsupervisory employee's actions. In my view, we should apply the *Glasgow* standard relied on by the trial court, which includes consideration of whether the harassment should be imputed to the employer.

According to the majority, the legal framework used by this court in *Fell v. Spokane Transit Authority*, 128 Wn.2d 618, 911 P.2d 1319 (1996), applies to this case. Under that framework, the plaintiff must establish four elements "[t]o make out a prima facie case under the WLAD for discrimination in the public accommodations context,"

> (1) that the plaintiff is a member of a protected class, RCW 49.60.030(1);
> (2) that the defendant is a place of public accommodation, RCW 49.60.215;
> (3) that the defendant discriminated against the plaintiff, whether directly or

3

indirectly, *id.*; and (4) that the discrimination occurred "because of" the plaintiff's status or, in other words, that the protected status was a substantial factor causing the discrimination, RCW 49.60.030.

*State v. Arlene's Flowers, Inc.*, 187 Wn.2d 804, 821-22, 389 P.3d 543 (2017) (citing *Fell*, 128 Wn.2d at 637 ("setting forth elements of prima facie case for disability discrimination under RCW 49.60.215")). Applying this standard, the majority holds that a business proprietor is directly liable, imposing a strict, vicarious liability standard for employees, regardless of the employer's knowledge of the harassing conduct or the opportunity to address the behavior or to discipline the perpetrator.

The majority rejects the *Glasgow* test here because it says that the legislature intended to impose direct liability on all employers for harassing conduct by any employee in any entity defined as a public accommodation. The majority says this result is mandated by the language of RCW 49.60.215(1), which says, "It shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in any . . . discrimination." But this language does not justify such draconian results.

First, the plain language of RCW 49.60.215(1) does not clearly impute an agent's acts to an employer, nor does a liberal reading of the statute reach this conclusion. Instead, the plain language of the statute merely states it is an unfair practice for a *person* to commit the discriminatory act—whether it is "the person" or the "agent" or "employee" of the person. RCW 49.60.215(1). Plainly, the persons who commit the act, or the agents, or the employees *themselves* will be directly liable for their own conduct.

4

Thus, it seems clear the legislature chose to expand who could be held accountable for their own actions in the public accommodations context by including the language "any person or the person's agent or employee" in an attempt to further its purpose of eradicating discrimination. RCW 49.60.215(1), .010. But broadening who may be directly liable for their own conduct, or even the conduct of others as the majority asserts, tells us nothing about whether the legislature intended to impose strict liability on employers who had no reason to know of the discriminatory conduct.

Although the majority argues the use of "any person or the person's agent or employee" justifies the imposition of strict vicarious liability because it must "mean something more than that each person is liable for their own actions," majority at 13, it fails to explain or justify departing from our principles of statutory interpretation for determining when a statute imposes strict liability. "Washington courts will not construe a statute to impose strict liability absent a clear indication that the Legislature intended to do so." *Wright v. Engum*, 124 Wn.2d 343, 349, 878 P.2d 1198 (1994) (citing *Hyatt v. Sellen Constr. Co.*, 40 Wn. App. 893, 897, 700 P.2d 1164 (1985)). In *Wright*, we rejected the plaintiff's argument to impose strict liability relating to our state's "White Cane Law," RCW 70.84.040. The plaintiff argued that the language stating a driver who fails to take "all necessary precautions to avoid injury" "shall be liable in damages for any injury caused such pedestrian" indicates the legislature intended to impose strict liability. *Wright*, 124 Wn.2d at 348.[2] The statute, he argued, is similar to the "dog biting" statute,

---

[2] The statute in its entirety reads:

5

which has been construed to create statutory strict liability.[3] *See Beeler v. Hickman*, 50

Wn. App. 746, 751-52, 750 P.2d 1282 (1988). The *Beeler* court noted that the statute,

RCW 16.08.040, addresses the knowledge requirement stating that an owner is liable

"regardless" of the "owner's knowledge of such viciousness." REM. REV. STAT. §

3109-1 (Supp. 1941). "[B]y dispensing with the knowledge requirement, the statute was

in derogation of common law." *Wright*, 124 Wn.2d at 349.

We emphatically rejected creating strict liability in this instance because while the

"Legislature intended to enhance protection for blind pedestrians, we disagree that this

enhanced protection was intended regardless of whether a motorist was aware of the

pedestrians' impairment." *Id.* at 351. When the statute is read as a whole, it is clear the

"Legislature has provided enhanced protection for blind pedestrians only where there is

---

The driver of a vehicle approaching a totally or partially blind pedestrian who is carrying a cane predominantly white in color (with or without a red tip), a totally or partially blind or hearing impaired pedestrian using a guide dog, or an otherwise physically disabled person using a service dog shall take all necessary precautions to avoid injury to such pedestrian. Any driver who fails to take such precaution shall be liable in damages for any injury caused such pedestrian. It shall be unlawful for the operator of any vehicle to drive into or upon any crosswalk while there is on such crosswalk, such pedestrian, crossing or attempting to cross the roadway, if such pedestrian indicates his intention to cross or of continuing on, with a timely warning by holding up or waving a white cane, using a guide dog, or using a service dog. The failure of any such pedestrian so to signal shall not deprive him of the right of way accorded him by other laws.
Former RCW 70.84.040 (1985).

[3] The "dog biting" statute in relevant part reads:
The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, *regardless of the former viciousness* of such dog *or the owner's knowledge of such viciousness.*
REM. REV. STAT. § 3109-1 (Supp. 1941) (emphasis added).

6

some conduct . . . or indication . . . by the pedestrian that he or she is sight or hearing impaired." *Id.* at 352. Thus, we held that RCW 70.84.040 creates liability only where a driver had notice of the victim's impairment.

It must be clear that the legislature intended to impose strict vicarious liability before we construe the statute to give that effect. The legislature knows when it wishes to create strict liability and is clear when doing so. The "dog biting" statute is an example of this, where it does not matter whether the owner is aware of the dog's dangerous propensities and the statute *explicitly states that.* We construe statutes to "avoid 'absurd or strained consequences.'" *Wright,* 124 Wn.2d at 351 (quoting *In re Eaton,* 110 Wn.2d 892, 901, 757 P.2d 961 (1988)). In stark contrast, RCW 49.60.215 is silent as to when an employer may be held liable for the acts of an employee or agent.

If we adopt the majority's reading of the statute, it would be more reasonable to impose strict vicarious liability on employers under RCW 49.60.180(3) (workplace discrimination) than in the context of public accommodations because the statute clearly states employers will be liable for discrimination occurring in the terms or conditions of employment. That statute, like RCW 49.60.215, is silent as to *when* an employer is vicariously liable for the acts of an employee. Thus, based on the majority's rationale, it necessarily follows that the employer under RCW 49.60.215 should be strictly liable for discrimination occurring in the "terms and conditions of employment." Yet, we did not interpret the workplace harassment statute so broadly. Instead, we applied a "knew or

should have known" standard to determine when employers should be vicariously liable in the workplace context.

In *Glasgow*, we held that an employer should at least be aware of the misconduct in order to hold it vicariously liable for the acts of an employee. In creating the *Glasgow* test, we found the Minnesota Supreme Court's rationale persuasive:

> In our view, the [Minnesota Human Rights] Act does not impose a duty on the employer to maintain a pristine working environment. Rather, it imposes a duty on the employer to take prompt and appropriate action when it knows or should know of co-employees' conduct in the workplace amounting to sexual harassment.

*Cont'l Can Co. v. State*, 297 N.W.2d 241, 249 (Minn. 1980). Further, we found actions under Title VII of the Civil Rights Act of 1964 persuasive in implementing a knowledge element to vicarious liability under the workplace harassment statute. *See Glasgow*, 103 Wn.2d at 406 n.2.[4] Thus, we held that an employer is vicariously liable under the WLAD where the act is silent. However, based on the fact that an employer is in the best position to rectify the misconduct *only when it*

---

[4] *See generally Barrett v. Omaha Nat'l Bank*, 726 F.2d 424, 427 (8th Cir. 1984) ("Sexual harassment by a co-employee is not a violation of Title VII unless the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action."); *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir. 1983) ("[T]he most difficult legal question . . . concern[s] the responsibility of the employer for that harassment. . . . [T]he plaintiff will have the additional responsibility of . . . holding the employer liable under some theory of *respondeat superior*. We believe . . . the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action."); *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982) ("the plaintiff . . . must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action"); *Bundy v. Jackson*, 205 U.S. App. D.C. 444, 641 F.2d 934, 943 n.8 (1981) ("The employer, in full knowledge of the alleged offense and having received a formal complaint, was in the best position to correct the offenses, yet impeded the complaint—and even abetted the offenses.").

8

*is aware or should be aware of the misconduct*, we believed a "knew or should have known" standard was appropriate to fairly hold employers accountable for the acts of their employees under RCW 49.60.180(3).

Again, we are faced with a statute that is silent as to *when* an employer should be held liable for the discriminatory acts of an employee or agent in RCW 49.60.215 (public accommodation). For the same reasons we articulated in *Glasgow*, where the statute is silent, vicarious liability should be imposed only where the business owner knew or should have known of the discrimination.

To impose strict vicarious liability in the public accommodations context but not in the workplace setting affords greater protection against discrimination for business customers than for employees who rely on continued employment and, therefore, have fewer options than a business customer. It makes no sense that a business proprietor enjoys more protection for instances of workplace discrimination where they are more likely to know of discrimination directed at other employees within the workplace than instances where a nonsupervisory employee discriminates against a fleeting patron. An employer should at least be in the best position to rectify the misconduct before we impose strict vicarious liability for the conduct of its employees.

*Fell* does not dictate a different result. In that case the alleged discriminatory action was the official act of those in control of the public accommodation, not a nonsupervisory employee as we have here. *Fell*, 128 Wn.2d 618 (discriminatory act was the decision to eliminate service—made by board of directors). This case never

9

considered imposing strict vicarious liability because the issue was not presented. The majority's reliance on *Fell* on the issue of imputed liability is misplaced.

Perhaps more importantly, the majority's holding does little to eradicate discrimination in places of public accommodation. An employer can timely take action, even terminating the accused employee when it becomes aware of the allegations. Yet even such action will not allow the diligent employer to avoid strict liability. This is an unreasonable and illogical outcome that will have grave implications for how employers conduct themselves in the public accommodations context.

While the majority says that its goal is to eradicate discrimination in places of public accommodation, applying strict liability does not achieve that purpose. Unless the employer knows or has reason to know of a low-level employee's conduct, the employer cannot address the conduct. Imposing strict liability will more likely result in management by lawsuit. I cannot imagine that was the legislature's intent when enacting RCW 49.60.215.

Because discrimination in places of public accommodation should be analyzed under the same standards as workplace harassment, I respectfully dissent.

_Madsen, J._

_Wiggins, J._