[No. 51818–1.   En Banc.   March 6, 1986.]

MARION D. BURTON, *Appellant*, v. RICHARD B. ASCOL,
ET AL, *Respondents*, ALLIED FIDELITY
INSURANCE COMPANY, *Appellant*.

*Goss, Moe & Sampson, P.S.,* by *Stanley A. Kempner, Jr.,* for appellant Burton.

*Patrick J. Downey,* for appellant Allied Fidelity Insurance Co.

*Powell & Morris* and *Larry J. Kuznetz,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Donna L. Walker, Assistant,* amici curiae for respondents.

DURHAM, J.—Marion D. Burton, a general contractor, brought a lien foreclosure action against Richard B. Ascol for work performed by Burton. Ascol counterclaimed against Burton, alleging negligent workmanship, breach of contract, and violations of the Consumer Protection Act, RCW 19.86. Ascol also filed a claim against Allied Fidelity Insurance Company, Burton's surety. The trial court entered a judgment for Ascol. In this appeal, Burton and Allied Fidelity contend the trial court erred by applying the Consumer Protection Act and awarding Ascol costs and attorney fees pursuant to the mechanics' and materialmen's lien foreclosure statute, RCW 60.04. Burton and Allied Fidelity also raise a number of issues concerning the trial court's award of damages and attorney fees pursuant to the Consumer Protection Act. Allied Fidelity further contends that the trial court lacked jurisdiction because Allied Fidelity never consented to have the case heard by a judge pro tempore pursuant to RCW 2.08.180 and the state constitution, article 4, section 7, and that the judgment against it is void for lack of notice. We hold that the trial court erred in applying the Consumer Protection Act and in awarding Ascol costs and fees pursuant to RCW 60.04. We also hold that the trial court did have jurisdiction and the judgment

against Allied Fidelity is not void for lack of notice. Because we conclude that the Consumer Protection Act does not apply, we need not address the issues concerning damages and fee awards under the act.

On November 5, 1982, Burton and Ascol entered into a contract for the purpose of constructing an addition to a building owned by Ascol. The contract provided that Ascol would pay Burton $31,976 to build the addition. Burton impliedly warranted that the addition would be constructed in a good and workmanlike manner. Burton and Ascol discussed the fact that the building would be constructed according to code. Burton began construction before the engineering plans were approved or certified by the Building Department. He completed the project on approximately January 10, 1983, and was paid the $31,976 provided for in the contract. Three days later, Ascol received a bill for extras from Burton in the amount of $4,872. On February 2, 1983, Burton filed a lien against Ascol for the extras.

In March 1983, Burton brought an action to foreclose the lien in Spokane County Superior Court. Ascol denied that he owed the amount claimed for extras and filed a counterclaim alleging damages for negligent workmanship, breach of contract for failure to construct the building in a workmanlike manner, and violations of the Consumer Protection Act. Ascol also brought a claim against Allied Fidelity, which had issued Burton a bond in the amount of $4,000, to recover the amount of that bond.

The cause of action came to trial on December 13, 1983, before the Honorable B. J. McLean, sitting as judge pro tempore. That day, the attorneys for Burton and Ascol signed a stipulation consenting to the judge pro tempore. At the beginning of the trial, Allied Fidelity's attorney, Patrick Downey, appeared in court and stated that he saw no reason to participate in the trial himself because Burton was actively defending the counterclaim. Downey asked the court if he could simply read into the record the dates of the contractor's bond. Counsel for Ascol requested that a

copy of the bond be admitted and the other counsel and the court agreed. The bond was stipulated into the record and Downey then asked the court to excuse him from the proceedings. Counsel for Burton and Ascol stated they had no objection to this and the court excused Downey for the remainder of the trial.

Testimony was then heard about the items of work for which Burton charged Ascol as extras. Both Burton and Ascol testified as to which work was covered by the contract and how the work charged as extras was performed. Ascol also testified that defects arose after the job was done and final payment was made. Specific problems about which he testified included damage to the roof and the interior of his existing building, leaks in the roof drain and rain gutters, improper installation of a door and a conduit, missing air vents, loosening outside walls, and defects in an extension to a loading ramp.

Ascol presented Robert Sackmaster as a witness. Sackmaster testified about agreements into which he had entered with Burton in 1981 and 1982. Burton agreed to perform a number of remodeling projects in Sackmaster's home and to build him a garage. Sackmaster testified that the quality of the materials and workmanship in the remodeling projects was defective. He stated that book-shelves had warped, cabinet doors had shrunk, electrical wiring was not new, and areas were not properly stained. Regarding the garage, Sackmaster testified that support beams were not mounted as agreed, electrical outlets were left uncovered, pegboard was patched and warped, the floor was poured so that water could not drain from the drive-way, and rain gutters leaked. Sackmaster also testified that Burton had stated that the work and materials would be of a good quality, that the job would be finished in a work-manlike manner, and that Burton's work did not conform to plans Sackmaster had made.

In its findings of fact, the trial court listed specific aspects of the project which it found were defective, miss-ing, or negligently performed. It also stated which items of

work were extras and determined the reasonable charges for the extras. It also found that the quality of Burton's work was "questionable". It found that a number of Burton's acts and practices were "subject to repetition" and had the "capacity to deceive a substantial portion of the purchasing public." These included the failure to perform work in a workmanlike manner, defective workmanship, negligent workmanship, representing to Ascol that the structure was built in conformance with engineering plans, failing to pay for materials as purchased, and using a person not licensed as an electrician to do electrical work.

The court found that Ascol sustained actual damages resulting from Burton's defective workmanship, breach of contract and misrepresentation in the amount of $5,000. It then assessed treble damages for violation of the Consumer Protection Act, bringing Ascol's total damages to $15,000. The court offset from this total the $4,680.95 which it found Burton should receive for extras. This resulted in a judgment for Ascol of $10,319.05. In addition, the court found that Ascol was entitled to attorney fees of $9,092.27 and costs of $282.15 pursuant to the Consumer Protection Act, and in the alternative found Ascol could recover attorney fees and costs pursuant to RCW 60.04.210(7) for Burton's unjust lien or as the prevailing party pursuant to RCW 60.04.130. The court also found that Ascol was entitled to the amount of the bond which Allied Fidelity had issued to Burton. The trial court entered a judgment in favor of Ascol accordingly on December 28, 1983. Burton and Allied Fidelity appeal from the trial court's judgment.

The appellants' first contention is that the trial court erred by applying the Consumer Protection Act to this case. The Consumer Protection Act provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. RCW 19.86.020. Private parties are authorized to bring actions for violations of the act: "Any person who is injured in his business or property by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court . . ." RCW 19.86.090.

Under this court's construction of RCW 19.86.090, there are three requirements for a private party to bring a consumer protection action. The conduct complained of must: (1) be unfair or deceptive, (2) be within the sphere of trade or commerce, and (3) impact the public interest. *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980).

In *Anhold,* this court also established a 3-part test for determining when the public interest is present for purposes of allowing a private party to bring a consumer protection action. The private party must prove that

> (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold,* at 46. The third prong of the public interest test, requiring the potential for repetition, is the matter specifically at issue here. Ascol presented one witness who testified that he had also experienced problems with the quality of Burton's workmanship in performing construction contracts. The question is if this evidence was substantial enough to support a finding of a potential for repetition of deceptive acts or practices, and, therefore, application of the Consumer Protection Act.

■ It would be arbitrary and meaningless for this court to set a specific number of instances of unfair or deceptive conduct which necessarily establishes the potential for repetition. Such a quantitative and mechanistic standard would be inherently unfair. Each case must rest on its own facts. In *Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 686 P.2d 465 (1984), however, this court imposed reasonable limits on when unfair and deceptive conduct will be deemed to have the potential for repetition. The purpose of the public interest requirement is "to limit actions under the act to those which are the consequence of a generalized course of conduct by a seller . . ." *Eastlake,* at 51. A party must establish that the potential for repetition of deceptive

acts or practices is "real and substantial." *Eastlake,* at 52. It is not sufficient to show that the repetition of an isolated act is hypothetically possible. If the evidence shows that the acts or practices in question are part of a protracted course of conduct, the potential for repetition is established. *Eastlake Constr. Co. v. Hess, supra.* These statements indicate that a party must be engaged in a general pattern of deceptive acts or practices in order for the trial court to find a potential for repetition. *See also Jackson v. Harkey,* 41 Wn. App. 472, 477, 704 P.2d 687 (1985).

We conclude that the evidence in this case is not substantial enough to support a finding of a real and substantial potential for repetition of deceptive acts or practices. The fact that a contractor has failed satisfactorily to perform construction contracts on more than one occasion does not necessarily signify that he is engaged in a protracted course or pattern of unfair or deceptive conduct. Burton's actions may have been improper, but they did not constitute the kind of generalized conduct which so impacts the public interest as to give rise to a violation of the Consumer Protection Act. Thus, the trial court's judgment against Burton for violation of the act is reversed.

The second issue is if the trial court erred by awarding Ascol attorney fees and costs pursuant to provisions in the mechanics' and materialmen's lien statute. RCW 60.04.

RCW 60.04.210(7) provides that a lien claimant shall be liable for attorney fees arising out of "any unjust, excessive or premature notice of claim . . ." The trial court awarded Ascol attorney fees in the alternative "for plaintiff's unjust lien" pursuant to RCW 60.04.210(7), but it did not explain why it found the lien unjust. We are unable to find substantial evidence to support the trial court's award of fees and costs on this basis. Burton claimed a lien for extras in the amount of $4,872. The trial court found he was entitled to $4,680.95 of this claim. Since Burton received almost the entire amount he had claimed, it cannot reasonably be concluded that his claim was unjust or excessive. Furthermore, there is no showing that his claim

was premature. Therefore, the trial court erred in awarding Ascol costs and attorney fees pursuant to RCW 60.04-.210(7).

█ Alternatively, the trial court awarded Ascol attorney fees and costs pursuant to RCW 60.04.130. That section provides that in a mechanics' or materialmen's lien foreclosure action, "[t]he court may allow to the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action . . . a reasonable attorney's fee . . ."

We conclude that the trial court also erred in awarding Ascol attorney fees and costs on this basis. We cannot say, as a matter of law, that either party clearly prevailed in this action. Burton recovered $4,680.95 of his lien claim and Ascol recovered $5,000 in damages for his counterclaim, leaving a net balance to Ascol of $319.05. Under these circumstances, it would be unfair to award Ascol attorney fees as the prevailing party.

We next consider Allied Fidelity's claim that the trial court lacked jurisdiction because Allied Fidelity did not expressly consent to the judge pro tempore. RCW 2.08.180 provides,

A case in the superior court . . . may be tried by a judge pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court, and sworn to try the case . . .

This language is virtually identical to article 4, section 7 of our constitution.

This court has modified the requirements set forth in RCW 2.08.180. The essential requirement for the valid appointment of a judge pro tempore is the parties' consent. *State v. McNairy*, 20 Wn. App. 438, 440, 580 P.2d 650 (1978). The parties may consent to the appointment of the judge pro tempore either orally in open court or by written stipulation. *National Bank v. McCrillis*, 15 Wn.2d 345, 356, 130 P.2d 901, 144 A.L.R. 1197 (1942); *State ex rel. Cougill v. Sachs*, 3 Wash. 691, 29 P. 446 (1892). If a party has not consented, the judge pro tempore lacks jurisdiction.

*McCrillis,* at 359.

It is true that neither Allied Fidelity nor its attorney signed the stipulation approving Judge McLean as judge pro tempore. Allied Fidelity maintains that neither the judge pro tempore nor counsel for Burton or Ascol informed Allied Fidelity that Judge McLean was a judge pro tempore. Allied Fidelity also contends that its attorney, Mr. Downey, mistakenly believed Judge McLean was hearing the case as a visiting judge and was unaware that he was no longer a superior court judge.

■ Downey's confusion regarding Judge McLean's status is understandable due to McLean's very recent retirement from the bench. Nonetheless, when Downey excused himself from participating in the proceedings and turned over to Burton's counsel all matters relevant to the conduct of the trial, he effectively delegated to Burton's counsel the authority to object to a pro tempore judge. Having given Burton's counsel general authority to try the case on its behalf, Allied Fidelity cannot now complain that the trial court lacked jurisdiction because Downey never explicitly consented to Judge McLean. Allied Fidelity's challenge to the trial court's jurisdiction is, therefore, without merit.

■ Finally, Allied Fidelity contends that the judgment entered against it is void because Allied Fidelity was not notified of the findings of fact, conclusions of law, and judgment. CR 54(f)(2) provides:

> No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served a copy of the proposed order or judgment . . .

Failure to comply with the notice requirement in CR 54(f)(2) generally renders the trial court's entry of judgment void. *Seattle v. Sage,* 11 Wn. App. 481, 482, 523 P.2d 942 (1974). A judgment entered without the notice required by CR 54(f)(2) is not invalid, however, where the complaining party shows no resulting prejudice. *Soper v. Knaflich,* 26 Wn. App. 678, 681, 613 P.2d 1209 (1980). Here, Allied

Fidelity has not shown that the lack of notice resulted in any prejudice. Allied Fidelity was allowed to appeal the judgment and to argue the issues it wished to raise. Therefore, the judgment against Allied Fidelity is not void for lack of notice.

In summary, we reverse the trial court's judgment against Burton for violation of the Consumer Protection Act and its award of attorney fees and costs to Ascol. Ascol is still entitled to recover $5,000 actual damages for breach of contract, defective workmanship and misrepresentation, offset by Burton's judgment of $4,680.95 for its lien claim. This leaves a net judgment for Ascol of $319.05 which may be satisfied out of Allied Fidelity's bond pursuant to RCW 18.27.040. Because of our decision that the Consumer Protection Act does not apply, the other issues raised by appellants are moot.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.