IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| EIGHT IS ENOUGH, LLC. <br><br> Respondent, <br><br> v. <br><br> CYNTHIA OHLIG, <br><br> Appellant, <br><br> and <br><br> ALL OTHER RESIDENTS and OCCUPANTS, <br><br> Defendants.[†] | No. 85901-3-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

DÍAZ, J. — Cynthia Ohlig, a tenant, appeals an order for writ of restitution entered in favor of her landlord, Eight is Enough, LLC. Ohlig alleges the superior court committed three errors. First, she claims the court erred when it did not even *consider* her disability discrimination defense at the show cause hearing. Second, she claims the court erred by entering a judgment for unpaid rent even though the action was not based on a failure to pay. Finally, she claims the court erred by entering the landlord's proposed judgment before it was served on her or her

---

[†] Cynthia Ohlig is the only participating defendant in this appeal.

attorney. We agree with the first assignment of error and remand this matter for the court to hold a hearing to expressly consider Ohlig's discrimination defense, including whether there are any genuine issues of material fact which require the court to set the matter for trial. Otherwise, we affirm.

## I.      BACKGROUND

Appellant Cynthia Ohlig rented a house in Centralia, Washington. Ohlig's home was on a parcel with three other homes and respondent Eight is Enough, LLC ("landlord") owned all four parcels. Ohlig lived with a dog and a live-in caretaker, her adult grandson. Ohlig claims that, in January 2022, the landlord ordered her to remove both from the property and that she complied.

On May 20, 2022, Ohlig gave her landlord a written "reasonable accommodation request."[1] She requested that she be allowed to have an emotional support dog, a live-in caretaker, and help with cleaning and maintaining the apartment.

Ohlig attached to the request a signed note from her primary care provider, Dr. Gerald Lee, who had diagnosed Ohlig with anxiety, depression, and post-traumatic stress disorder. To alleviate those challenges, Dr. Lee had recommended that Ohlig have a "pet or emotional support animal/person," adding that "[t]he presence of this animal or person is necessary for the mental health" of Ohlig.

Ohlig alleges that the landlord responded to her request by claiming the

---

[1] Ohlig's written accommodation request is dated May 11, 2022. However, in a declaration, she claims she hand delivered the request to the landlord on May 20, 2022.

request was "nonsense" and stating that, if the request was granted, the landlord would charge "a pet deposit and substantially rais[e] the rent."

Five days after her request, the landlord gave Ohlig a 90-day termination notice. The notice indicated the landlord intended to sell Ohlig's home and that the lease would terminate on September 30, 2022. The month following, the landlord filed an unlawful detainer action for a writ of possession in Lewis County Superior Court. The landlord then moved the court to hold a show cause hearing to determine who had the right to possess the property.

In November 2022, at the conclusion of the show cause hearing, the court ruled in favor of the landlord. As will be discussed in more detail below, the court held that the landlord had sufficiently shown their intent to sell the property and met all the statutory requirements. However, the court did not address, either at the hearing or within its written findings, Ohlig's defense that the eviction was discriminatory. The court entered the landlord's proposed order which granted it possession of the home, $4,475.00 in past-due rent, as well as attorney fees and costs. Ohlig now appeals.

## II. ANALYSIS

### A. Procedural Background and Standard of Review

An unlawful detainer action is "a statutorily created proceeding that provides an expedited method of resolving the right to possession of property." Christensen v. Ellsworth, 162 Wn.2d 365, 370-371, 173 P.3d 228 (2007).

"The procedures set forth in the generalized unlawful detainer statutes, chapter 59.12 RCW, 'apply to the extent they are not supplanted by those found in

the Residential Landlord-Tenant Act [(RLTA)].'"  Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 156, 437 P.3d 677 (2019) (quoting Hous. Auth. of City of Pasco & Franklin County v. Pleasant, 126 Wn. App. 382, 390, 109 P.3d 422 (2005)).  The RLTA applies to disputes, as here, involving a residential lease.  Carlstrom v. Hanline, 98 Wn. App. 780, 786, 990 P.2d 986 (2000).  Because "[c]hapters 59.12 and 59.18 RCW are statutes in derogation of the common law[,]" they "are strictly construed in favor of the tenant."  Harmon, 193 Wn.2d at 156.

A landlord may evict a tenant if, among other grounds, "[t]he tenant continues in possession after the owner elects to sell a single-family residence and the landlord has provided at least 90 days' advance written notice of the date the tenant's possession is to end."  RCW 59.18.650(2)(e); see also Klee v. Snow, 27 Wn. App. 2d 19, 22, 531 P.3d 788 (2023) (quoting RCW 59.18.650(2)(e)).  Further, an owner "'elects to sell' when the owner makes reasonable attempts to sell the dwelling within 30 days after the tenant has vacated[.]"  Id.  The landlord may apply for a writ of restitution "at the same time as commencing the action or at any time thereafter."  Harmon, 193 Wn.2d at 157 (citing RCW 59.18.370).

"To obtain a writ, a landlord must apply for an order for a show cause hearing . . . and serve that order on the tenant.  A show cause hearing is a 'summary proceeding[ ] to determine the issue of possession pending a lawsuit' and is not the final determination of rights in an unlawful detainer action."  Id. (alteration in original) (citation omitted) (quoting Hanline, 98 Wn. App. at 788; RCW 59.18.370).  This opportunity for immediate temporary relief makes the show cause process similar to a preliminary injunction proceeding.  Faciszewski v. Brown, 187

Wn.2d 308, 315 n. 4, 386 P.3d 711 (2016).

"At the show cause hearing, the court will determine if the landlord is entitled to a writ of restitution before a trial on the complaint and answer." Harmon, 193 Wn.2d at 157 (citing RCW 59.18.380). "The court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer[.]" RCW 59.18.380. "[I]f it shall appear that the [landlord] has the right to be restored to possession of the property, the court shall enter an order directing the issuance of a writ of restitution[.]" Id. And then, "the landlord can deliver the writ to the sheriff, who will serve it on the tenant." Harmon, 193 Wn.2d at 158 (citing RCW 59.18.390(1)). However, "[i]f there are genuine issues of material fact regarding possession or defenses raised by the tenant, the court sets the matter for trial." Tedford v. Guy, 13 Wn. App. 2d 1, 11, 462 P.3d 869 (2020) (citing RCW 59.18.380).

Thus, there are two separate events in an unlawful detainer action with two different standards of review: the factual determinations at the show cause hearing, and the decision to grant trial. As to the former, "[a] trial court's findings of fact will not be overturned on appeal if it is supported by substantial evidence." Leda v. Whisnand, 150 Wn. App. 69, 85 n. 6, 207 P.3d 468 (2009) (in an unlawful detainer action, considering whether the trial court's "finding of fact" on an element of a writ was erroneous); MH2 Co. v Hwang, 104 Wn. App 680, 685, 16 P.3d 1272 (2001) (in an unlawful detainer action, holding "[o]n appeal, the trial court's findings of fact must support its conclusions of law; the findings must be supported by substantial evidence"). "'Substantial evidence exists when there is a sufficient

quantity of evidence to persuade a fair-minded, rational person that a finding is true.'" Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015) (quoting Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006)). Unchallenged findings of fact are verities on appeal. Id.

The court's factual findings are reviewed differently than the decision to order trial. Division Two of this court has held that "[w]e review a decision to strike a trial date in an unlawful detainer action for an abuse of discretion." Tedford, 13 Wn. App. 2d at 16. Division Three of this court disagreed, holding that Tedford did "not draw from the language of the applicable statute, nor [was] it based on Supreme Court precedent." Kiemle & Hagood Co. v. Daniels, 26 Wn. App. 2d 199, 218, 528 P.3d 834 (2023).

What is clear is that our Supreme Court has held that "[w]hether or not the court issues a writ of restitution at the show cause hearing, if material factual issues exist, the court is required to enter an order directing the parties to proceed to trial on the complaint and answer." Harmon, 193 Wn.2d at 157 (emphasis added). This language is "nearly the identical language that governs summary judgment." Daniels, 26 Wn. App. 2d at 218 (citing CR 56(c)). Summary judgment is reviewed de novo and, accordingly, "it appears something close to de novo review should apply, at least when a tenant denies the landlord's grounds for eviction or raises an affirmative defense." Id. at 218-219 (emphasis added).[2]

---

[2] This division recently issued an unpublished decision agreeing with Kiemle that a trial court's decision not to grant trial at a show cause hearing is reviewed de novo. Maggie Properties v. Nolan, No. 84549-7-I, slip op. at 14-15 (Wash. Ct. App. Dec. 4, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/845497.pdf; GR 14.1(a) ("Unpublished opinions of the Court of Appeals have no precedential

B.      Ohlig's Discrimination Defense

Ohlig first claims the superior court erred by failing to consider her discrimination defense at the show cause hearing. We agree.

1. Overview of Applicable Substantive Law

"Both federal and state law prohibit landlords from discriminating against disabled tenants[.]" Daniels, 26 Wn. App. 2d at 221 (citing 42 U.S.C. § 3604(f)(2), (3)(B), RCW 49.60.222(1)(f), (2)(b)). Specifically as to state law, the Washington Law Against Discrimination (WLAD) states that "[t]he right to be free from discrimination because of . . . the presence of any sensory, mental, or physical disability is . . . recognized as and declared to be a civil right." RCW 49.60.030(1). Further, "[i]t is an unfair practice for any person . . . because of . . . the presence of any sensory, mental, or physical disability . . . [t]o expel a person from occupancy of real property[.]" RCW 49.60.222(1)(i); see also RCW 49.60.222(2)(b) (refusing a reasonable accommodation can constitute discrimination). The provisions of the WLAD "shall be construed liberally[.]" RCW 49.60.020.

The WLAD also prohibits retaliation for "oppos[ing] any practices forbidden by this chapter[.]" RCW 49.60.210. There appears to be scant, if any, Washington caselaw considering a retaliatory eviction claim under the WLAD. However, our local federal district court held that "[t]aking an adverse action against a disabled employee because she requested or utilized a reasonable accommodation is a form of disability discrimination in violation of the WLAD's anti-discrimination

value and are not binding on any court. However . . . [such cases] may be accorded such persuasive value as the court deems appropriate.").

provision." Hansen v. Boeing Co., 903 F. Supp. 2d 1215, 1218 (W.D. Wash. 2012) (citing RCW 49.60.180). In other words, "the decision to request a reasonable accommodation is a way to oppose the non-accommodated workplace status quo," meaning requesting accommodations is a form of "opposition" activity protected under RCW 49.60.210. Id. While this decision was in the context of employment, the court prefaced its holding on the fact that "[t]he need for reasonable accommodation is part and parcel of a disability" in any context. Id.

All of this said, our Supreme Court has "long held that counterclaims may not be asserted in an unlawful detainer action." Hous. Auth. of City of Everett v. Terry, 114 Wn.2d 558, 569-70, 789 P.2d 745 (1990). This constraint is proper because the scope of unlawful detainer actions is "limited to the question of possession and related issues such as restitution of the premises and rent." Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). In turn, a "tenant may assert only those equitable defenses which affect the right of possession." Josephinium Assocs. v. Kahli, 111 Wn. App. 617, 619, 45 P.3d 627 (2002).

Despite the narrow scope of unlawful detainer actions, this court, however, has also held that "[t]he right to be free from discriminatory eviction is a substantive legal right, and ordinary civil remedies are unavailing in the face of a summary eviction proceeding." Id. at 625. Moreover, we have held that "[d]iscrimination may be a *defense* that *arises out of the tenancy*. When it does, the statute permits a tenant to assert the defense *and requires the court to consider it*." Id. at 626

(emphasis added).[3] After all, "[a] landlord cannot simply decide to evict all tenants of color." Id.

Generally, to show retaliation, there must be a causal link between the protected employment activity and the adverse action. Cornwell v. Microsoft Corp., 192 Wn.2d 403, 411-12, 430 P.3d 229 (2018). Because employers rarely reveal that their actions are motivated by retaliation, employees may point to circumstantial evidence to demonstrate the causal connection. Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wn.2d 46, 69, 821 P.2d 18 (1991). Circumstantial evidence may be the only evidence available and can be sufficient. Id. For example, "[t]hat an employer's actions were caused by an employee's engagement in protected activities may be *inferred from 'proximity in time* between the protected action and the allegedly retaliatory employment decision.'" Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003) (emphasis added) (quoting Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000)) (internal quotation marks omitted); see also Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).[4]

---

[3] We further held, in Jospehinium, that "[i]f unlawful discrimination is *the* reason for an eviction, the defense certainly affects the tenant's right of possession." 111 Wn. App. at 625 (emphasis added). The usage of "*the* reason" instead of "*a* reason" does not appear to hold any analytical weight. That statement was made in passing and is not referenced or further discussed elsewhere in the opinion. While Ohlig urges us to follow Tafoya v. State Human Rights Com'n, 177 Wn. App. 216, 226, 311 P.3d 70 (2013), and adopt the "substantial factor" test present in employment discrimination cases such as Mackay v. Acorn Custom Cabinetry, Inc., 127 Wn.2d 302, 307, 898 P.2d 284 (1995), the parties did not fully or adequately brief this distinction when discussing Josephinium. As such, we do not reach this issue.

[4] These cases concern employment discrimination, not housing discrimination. Even so, "[w]here there is not an established standard for establishing

2. Discussion

Prior to the show cause hearing, Ohlig submitted competent evidence in support of her discrimination defense, including the following. First, Ohlig submitted Dr. Gerald Lee's diagnosis for anxiety, depression, and chronic pain. Second, Ohlig attached to her declaration her accommodation request, including Dr. Lee's signature and diagnosis. Third, Ohlig declared that none of the other tenants on the parcel received a termination notice. Fourth, in her answer, Ohlig argued that the timing of the termination notice–a mere five days after Ohlig claims she gave the landlord her accommodation request–supported her claim that the notice of termination was retaliatory. Finally, Ohlig claims the landlord already had shown animus towards her service animal and caregiver in January 2022. In short, Ohlig met her burden of presenting competent evidence in support of a prima facie case of discrimination, which was offered here as a defense to eviction.

At the show cause hearing, the landlord submitted evidence of its intent to sell the property, and it appears the court treated the landlord's certification and evidence of their intent to sell as dispositive. Specifically, the court granted the landlord's requested relief, finding that it had "met all requirements of the statute" and had "taken reasonable steps to sell the property or to show an intent that they plan to sell[.]" Most importantly for this issue, nowhere during the hearing, or within its written findings, did the court address or in any way indicate it considered Ohlig's discrimination defense.

---

discrimination in a certain context, [courts] will often rely on the standards from employment discrimination cases." Tafoya, 177 Wn. App. at 226.

On appeal, Ohlig first argues that "Washington's Supreme Court has already held [in Faciszewski] that courts presiding over a show cause hearing must consider evidence presented by a tenant in support of a defense, even if the termination notice is facially valid." Ohlig also argues that "[d]isability discrimination is a defense to an unlawful detainer" under Josephinium, which the court was obligated to consider.

As to her first argument, Ohlig's interpretation of Faciszewski is somewhat overbroad. There, our Supreme Court analyzed the City of Seattle's Just Cause Eviction Ordinance (JCEO) and determined that a landlord's certification of just cause is not dispositive on the issue of possession. Faciszewski, 187 Wn.2d 323-24. As such, the court held that the lower court had erred by not considering the tenant's evidence disputing just cause. Id. However, our Supreme Court expressly stated that its holding was limited to Seattle's JCEO.[5] Id. at 317. As such, we do not rely on or interpret Faciszewski as standing for the sweeping proposition that a court must consider all defenses in all kinds of RTLA actions.

Ohlig's presentation of Josephinium however, is correct. We clearly held

---

[5] Faciszewski does reference the RLTA. Specifically, the court held that "[w]e believe the JCEO operates in harmony with the RLTA and unlawful detainer procedures when SMC 22.206.160(C)(4) is read not to make the landlord's certification determinative of 'just cause.'" Faciszewski, 187 Wn.2d at 317. The text of the JCEO also references how the RLTA governs the unlawful detainer process. Id. at 316. As such, the court concluded that "[t]he City that enacted the JCEO reads it this way, and such a reading retains the integrity of both the unlawful detainer process and the ordinance." Id. at 317. Even so, the vast majority of the court's holding referenced JCEO provisions that are distinct from the RLTA. The earlier references to the RLTA appear to be the court describing the contrasting provisions of the JCEO and RLTA within the broader eviction process. Thus, Faciszewski's relevance is limited.

there that the RLTA "permits a tenant to assert [a discrimination] defense *and requires the court to consider it*." 111 Wn. App. at 626 (emphasis added). We so held because, "[i]f unlawful discrimination is the reason for an eviction, the defense certainly affects the tenant's right of possession." Id. at 625.

The landlord's primary argument in response, repeated in different ways throughout its briefs, is that Ohlig's discrimination defense is a mere counterclaim, which is separate from the right to possession, and thus the court did not need to consider it. However, this argument is simply a misstatement of the well-reasoned holding in Josephinium, and a mischaracterization of how Ohlig presents her claims. Ohlig is not seeking damages in this action, merely the right of continued possession, which a retaliatory eviction does not extinguish. In turn, we hold that it was error for the trial court to fail to consider the discrimination defense at the show cause hearing.

In its supplemental brief, the landlord acknowledges that Josephinium is good, applicable law, which permits a tenant to present some discrimination defenses at a show cause hearing. But, the landlord claims Josephinium is distinguishable, arguing that the court cabined its holding to the "'extremely unlikely'" and "'unusual circumstance'" of that matter. Suppl. Br. of Resp't at 3-4 (quoting Josephinium, 111 Wn. App. at 620, 627). That is, the landlord argues that Josephinium requires a discrimination defense be causally related to the reasons for the eviction. And, in Josephinium, the eviction was so related, according to the landlord, because there a disabled tenant requested an available unit that was less expensive. Id. at 4 (citing Josephinium, 111 Wn. App. at 627).

12

*But for* the landlord's failure to accommodate, the tenant would not have been behind on rent and thus subject to eviction. In contrast, the landlord avers Ohlig's discrimination claim has no such causal connection to its reasons for eviction, the purportedly long-planned sale of the property, and, thus, the trial court did not have to consider it.

We hold, first, that the landlord's interpretation of Josephinium simply runs counter to the purposes of the WLAD. The landlord's reading would excuse landlords and courts from ever addressing superficially valid evictions which are motivated by blatant discrimination, making a mockery of the WLAD's aim of "elimination and prevention of discrimination" in housing. RCW 49.60.010. As stated by Ohlig in her supplemental briefing, "discrimination would not be 'prevented' -it would only be compensated-for after the fact."[6]

Moreover, there is nothing in Josephinium which points to a distinction between discrimination causally related to the eviction and discrimination not so related. It is sufficient that a tenant raises a competent discrimination claim, which then the court must at least "consider." Josephinium, 111 Wn. App. at 626.

The landlord also makes four further arguments, none of which have merit. First, the landlord argues that the plain language of RCW 59.18.650(2)(e) only

---

[6] In her supplemental briefing, Ohlig presents a persuasive hypothetical based on the facts of Tafoya, 177 Wn. App. at 226, which admittedly did not involve eviction. Ohlig asks us to consider a situation where a "landlord sexually harassed the tenant by repeatedly propositioning her. What if, five days after she refused a sexual proposition, the landlord served her with a notice of intent to sell? Under the landlord's reading of the WLAD, she would have no defense, would be evicted, and would have to sue afterwards for damages." Such a defense would be incompatible with the WLAD's focus on prevention.

requires that a landlord "intend to sell" and take "reasonable attempts to sell" the property. However, the statute does not state or even suggest a landlord's election or attempts to sell the property are dispositive within an unlawful detainer action. RCW 59.18.650(2)(e). Rather, the statute simply enumerates various bases under which a landlord may seek eviction. Id. at (1)(a). In other words, RCW 59.18.650(2)(e) merely provides one way to lawfully begin the eviction process. It does not provide a way to decisively obtain possession against all defenses.

Second, the landlord argues Ohlig must be current on her rent and utilities before availing herself of any remedial provision of the RLTA. This claim relies on statutory language that "[t]he tenant shall be current in the payment of rent including all utilities which the tenant has agreed in the rental agreement to pay before exercising any of the remedies accorded him or her under the provisions of this chapter[.]" RCW 59.18.080. Indeed, this court has previously held that a commercial tenant could not bring a retaliatory eviction defense because they were in breach of their leases. Port of Kingston v. Brewster, No. 73668-0-I, slip op. at 7 (Wash. Ct. App. Dec. 7, 2015) (unpublished) https://www.courts.wa.gov/opinions/pdf/736680.pdf (citing Port of Longview v. Int'l Raw Materials, Ltd., 96 Wn. App. 431, 438, 979 P.2d 917 (1999)).[7]

Kingston and Longview (on which Kingston relies) are distinguishable from this matter. Longview concerned a First Amendment claim which was an "equitable affirmative defense," not a "substantive" statutory defense, where

---

[7] As an unpublished case, Kingston is not binding on this court and need not be accorded precedential value. GR 14.1.

14

"ordinary civil remedies are unavailing." 96 Wn. App. at 438; see also Josephinium, 111 Wn. App. at 626. Moreover, a substantive right, such as that in the WLAD, is not a "remedial provision" of the RLTA (such as those remedies the plaintiff sought to obtain in Longview and Kingston), but rather a right that "affects the tenant's right of possession," which is the appropriate sole subject of a show cause hearing. Josephinium, 111 Wn. App. at 625. In other words, the defense Ohlig is asserting goes to her right to retain possession under the WLAD, not her right to recover damages for a violation of the RLTA.

Stated otherwise, Ohlig's civil rights are not tethered to the RTLA. Ohlig is bringing her claim under the WLAD's anti-retaliation provision. RCW 49.60.222(1)(i), RCW 49.60.210. As stated in a slightly different context, the request for reasonable accommodations is a protected activity under the WLAD. Hansen, 903 F. Supp. 2d at 1218 (citing RCW 49.60.210). While Hansen was decided in the context of employment, the court observed that "[t]he need for reasonable accommodation is part and parcel of a disability" in a broader sense. Id. The right to be free from discriminatory retaliation is not limited to the employment context. Indeed, WLAD's mandate, while primarily focused on employers, still broadly includes actions by "any employer, employment agency, labor union, *or other person* . . . to expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter[.]" RCW 49.60.210(1) (emphasis added).

As such, even if Ohlig was somehow foreclosed from obtaining remedies under the RTLA because of her failure to pay rent, her distinct right to be free from

15

disability discrimination under the WLAD is untouched.

Third, the landlord argues that Ohlig improperly asserted her discrimination defense. Specifically, the landlord claims that RCW 59.18.240(2) required Ohlig to first complain to a government authority regarding compliance with maintenance or operation regulations before bringing a retaliation claim. The landlord offers no authority that such a requirement applies to all types of retaliation claims. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (2020) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

Similar to the landlord's second argument, at most, this argument concerns a process for "reprisals or retaliatory actions" by the landlord *under the RLTA* and does not impact Ohlig's distinct right to be free from discrimination under the WLAD. RCW 59.18.240. Again, "[i]f unlawful discrimination is the reason for an eviction, the defense certainly affects the tenant's right of possession" and must be considered at a show cause hearing. Josephinium, 111 Wn. App. at 625-26.

Finally, the landlord argues the superior court found no issue of material fact on Ohlig's discrimination defense, meaning trial was unnecessary. This argument simply mischaracterizes the court's decision. The court's oral and written findings made no reference to Ohlig's discrimination defense or to whether there was an issue of material fact more generally.

For the reasons above, we remand the case for the superior court to hold another hearing to expressly consider Ohlig's discrimination defense. "[I]f material factual issues exist, the court is required to enter an order directing the parties to proceed to trial on the complaint and answer" as to Ohlig's defense. Harmon, 193 Wn.2d at 157.

C.      Judgment for Unpaid Rent

Ohlig next claims it was improper for the landlord to seek back-owed rent on appeal when the unlawful detainer action was based on the intent to sell, not a failure to pay. We disagree.

The RLTA does state that:

> The jury, or the court . . . shall also assess the damages arising out of the tenancy occasioned to the landlord by any . . . unlawful detainer . . . and, *if the alleged unlawful detainer is based on default in the payment of rent*, *find the amount of any rent due.*

RCW 59.18.410(1) (emphasis added). But, the statute also states:

> The court shall examine the parties . . . and if it shall appear that the plaintiff has the right to be restored to possession . . . shall enter an order directing the issuance of a writ of restitution . . . and if it shall appear to the court that there is no substantial issue of material fact of the right of the plaintiff to be *granted other relief as prayed for in the complaint* and provided for in this chapter[.]

RCW 59.18.380 (emphasis added). And, this court has held that "[u]nlawful detainer actions under RCW 59.18 are special statutory proceedings with the limited purpose of hastening recovery of possession of rental property . . . *plus incidental issues such as restitution and rent, or damages.* Phillips v. Hardwick, 29 Wn. App. 382, 385-86, 628 P.2d 506 (1981) (emphasis added). Taken even further, we have held that "regardless of whether the landlord is successful in

17

obtaining the writ of restitution, the statute permits the landlord to seek 'other relief' as part of the unlawful detainer process, such as a final judgment for damages or termination of the tenant's lease." Webster v. Litz, 18 Wn. App. 2d 248, 253, 491 P.3d 171 (2021) (citing RCW 59.18.380). In other words, a landlord may seek owed rent under the RLTA not only in evictions based upon the tenant's failure to pay; actions based on a failure to pay rent are one of many instances where rent can be sought.

In response, Ohlig cites to Castellon v. Rodriguez, 4 Wn. App. 2d 8, 18, 418 P.3d 804 (2018), where we held that a trial court in an unlawful detainer action "lack[s] jurisdiction to enter a civil money judgment and issue the writ of garnishment." There, the lower court had entered a judgment which included $5,335.04 in damages in addition to "incidental issues" such as attorney fees, costs, and rent. Id. at 14. We reversed the trial court's judgment and held that the court should have "convert[ed] the Castellons' unlawful detainer action into a general action for damages prior to issuing judgment," rather than taking the further step of ordering garnishment. Id. at 19. Indeed, Castellon still stands for the proposition that the landlord has avenues to seek the unpaid rent within the narrow scope of unlawful detainer.

Importantly, Ohlig also does not contest the landlord's assertion that she stopped paying rent in July 2022 nor the amount of rent owed. Even after the landlord's appellate brief directly pointed this out, Ohlig's reply brief failed to address the matter in any depth. As such, there does not appear to be a genuine issue of material fact pertaining to Ohlig's failure to pay or the amount of rent she

18

owes, meaning a trial on this issue was unnecessary and the relief ordered appropriate. CR 56(c) (a grant of summary judgment requires there is "no genuine issue as to any material fact").

In short, should the landlord prevail after the court considers the discrimination defense, the landlord may obtain this back rent as appropriate "other relief." RCW 59.18.380.

D.    Notice of Proposed Judgment

Under Washington's civil rules, "[n]o order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment[.]" CR 54(f)(2). Generally, "[f]ailure to comply with the notice requirement in CR 54(f)(2) generally renders the trial court's entry of judgment void." Burton v. Ascol, 105 Wn.2d 344, 352, 715 P.2d 110 (1986). However, the judgment is not invalidated "where the complaining party shows no resulting prejudice." Id. For example, the Burton court found there was no prejudice where the complaining party was still able to present their theory of the case. Id. at 352-53.

Ohlig argues that the writ of restitution must be vacated as her "attorney never saw the proposed findings, conclusions and judgment, nor the landlord's cost bill and attorney fee declaration" before it was entered. At the show cause hearing, Ohlig's attorney had claimed he "was not served any of these declarations that [the landlord's attorney] has" and thus asked the court "set this over for two weeks so I can respond to those papers." The landlord's attorney asserted that he had served these papers.

19

In response to Ohlig's protests at the hearing, the court added language to the writ of restitution expressly giving Ohlig two weeks before the eviction order could be executed. As intended by the court, this provision gave Ohlig time to file a motion for reconsideration. Ohlig's motion argued at length that the case involved factual disputes requiring a jury trial, including Ohlig's discrimination defense. The motion was ultimately denied.

In short, the court granted Ohlig the two weeks her attorney requested and her counsel was able to review the missing documents and present arguments. As such, she was not prejudiced and a vacatur is unwarranted. Burton, 105 Wn.2d at 352.

E.      Attorney Fees

This court in its discretion may grant reasonable attorney fees on appeal provided the party's briefing "request[ed] the fees or expenses" and the "applicable law grants to a party the right to recover." RAP 18.1(a). Under the RLTA, "[t]he prevailing party may recover the costs of suit or arbitration and reasonable attorneys' fees." RCW 59.18.290(1), (2). In the event of a default on rent, Ohlig's lease states that the landlord may seek "the entire balance as well as any damages, expenses, legal fees, and costs."

Both parties request fees on appeal. However, this court has held that it is premature to award fee when the matter has been remanded and no party has definitively prevailed on the merits, as here. Leda, 150 Wn. App. at 87 ("Although RCW 59.18.290(2) allows for an award of attorney fees to the prevailing party . . . no party has yet prevailed on the merits, any determination of the prevailing party

on appeal would likewise be premature"). Following that hearing or trial, the prevailing party may petition the trial court to award its fees, both for the proceedings below and their fees on appeal. See State v. Numrich, 197 Wn.2d 1, 31, 480 P.3d 376 (2021) ("Washington courts have routinely afforded deference to the trial court's own experience evaluating the reasonableness of attorney fees[.]"); see also Atkinson v. Estate of Hook, 193 Wn. App. 862, 874, 374 P.3d 215 (2016) ("The attorney fee statutes cited by the parties allow the court to exercise considerable discretion. The trial court, being more fully acquainted with the entire case and the parties, is in a better position than this court to exercise that discretion.").

III.     CONCLUSION

We remand this matter for the superior court to expressly consider Ohlig's disability discrimination defense. If genuine issues of material fact exists, the court is required to enter an order directing the parties to proceed to trial as to Ohlig's defense. We otherwise affirm.

_Díaz, J._

WE CONCUR:

21