# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SARA HUTCHINSON, an individual, | No. 58844-7-II |
| Appellant, | |
| v. | |
| ED PUTKA, an individual, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Ed Putka leased a commercial space to Sara Hutchinson, a disabled veteran, for her massage therapy business. Years later, Putka put his house up for sale, Hutchinson wanted to purchase the home, and Putka signed a purchase and sale agreement with Hutchinson. Putka then learned that Hutchinson's massage therapy license was expired and that she suffered from mental health disabilities. Soon after, Putka told Hutchinson that he would not evict her from the commercial lease nor take any other adverse actions if she rescinded the purchase and sale agreement. Despite Putka's threats, Hutchinson closed on the house and Putka evicted her from the commercial building.

Hutchinson brought several claims against Putka and, relevant to this appeal, the trial court dismissed Hutchinson's claim for discriminatory coercion or intimidation related to a real estate transaction under the Washington Law Against Discrimination, ch. 49.60 RCW, based on her disability and veteran status.

Among other procedural issues, Hutchinson argues that the trial court erred by dismissing her statutory discrimination claim because there was a genuine dispute of material fact about

whether Putka's cited reasons for asking Hutchinson to rescind the house sale, his concerns that she had practiced without a license, were pretextual. We conclude that Hutchinson fails to present sufficient evidence to create a genuine dispute of material fact that discriminatory intent against veterans or disabled people was a substantial motivating factor for Putka's actions. Although Putka attempted to persuade Hutchinson to rescind the purchase and sale agreement by threatening eviction from the commercial lease, there is no evidence of pretext other than the timing of his efforts and his dislike for her, which have typically not been enough to avoid summary judgment. We affirm the trial court's summary judgment for Putka. We decline to grant attorney fees.

FACTS

I. BACKGROUND

Because this is an appeal of a summary judgment order, we recite the facts as alleged by and in the light most favorable to Hutchinson as the nonmoving party. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526, 404 P.3d 464 (2017).

Hutchinson is a disabled veteran who suffers from posttraumatic stress disorder (PTSD), depression, and anxiety. Hutchinson's massage therapy license lapsed in 2011. In 2019, Putka leased a commercial space to Hutchinson. Despite her lapsed license, Hutchinson ran a massage therapy business in that space. The lease required that Hutchinson abide by all state and local laws related to her business. Hutchinson was aware that she lacked a license while practicing in Putka's commercial building.

Hutchinson alleged that soon after moving her business into Putka's commercial building in 2019, she put a Veterans of Foreign Wars (VFW) sign in the window, and Putka asked her to take it down or place it somewhere not visible from the windows. Putka explained that he asked

2

Hutchinson to remove the VFW sign because it violated the building rules, which prohibited the placement of signs without the owner's consent. Hutchinson claimed that she had previously put signs up in the window and Putka did not protest. Putka clarified that political signs, specifically, were not allowed in the commercial building. Except for discussing the VFW sign, Putka and Hutchinson interacted very little before the events in this case.

On May 13, 2021, Hutchinson learned that Putka and his wife were selling their house. They had built a house next door and were moving there. Hutchinson submitted a full price offer and Putka accepted. Both parties agree that Putka knew Hutchinson was the buyer. On May 15, the parties signed a binding purchase and sale agreement. Documents attached to the agreement indicated that Hutchinson was using a Veterans Affairs (VA) loan.

Hutchinson texted Putka and his wife thanking them and Putka replied, "We look forward to closing and having a purchaser who appreciates the house" Clerk's Papers (CP) at 283. Hutchinson also wrote a letter to Putka that stated she was a disabled veteran. Putka asserted that at the time, he assumed Hutchinson's "military disability had to do with either being wounded or hurt during her service and had no idea it may have been psychological." CP at 52.

Before the official closing date on July 15, Putka completed $10,000 worth of repairs on the house, offered to give Hutchinson an upright piano and a set of patio furniture, and drafted a water easement for the property.

At this time, Hutchinson was running for city council. Both Putka and his wife were very involved in local politics and had previously served on the city council. They were supporting the incumbent, who was Hutchinson's opponent.

On July 8, Putka texted Hutchinson asking her to meet in the commercial building. When they met, Putka told Hutchinson that he had learned her massage therapy license had lapsed. Hutchinson confirmed that her license was expired. Putka asked if Hutchinson had submitted the paperwork to renew her license, and Hutchinson told him she had, even though she had not. When pressed, Hutchinson admitted to Putka that she had not submitted the renewal paperwork. Putka told Hutchinson that she could not continue to perform massages on the property before renewing her license and she agreed. Putka also told Hutchinson that she should call her realtor because Hutchinson's "employment ha[d] changed, and [she would not] qualify for financing anymore." CP at 117. Hutchinson expressed that she did not want to call her realtor because he was a client. Putka later texted Hutchinson stating that he could not find her state business license. Hutchinson learned that her business license was also expired and renewed it that day, sending a picture to Putka to confirm the renewal.

The next day, July 9, Hutchinson asked Putka to talk. They met and Hutchinson apologized for her lapsed licenses. When Putka asked why Hutchinson let her massage therapy license lapse, Hutchinson told him that she had "a disability with depression, anxiety and PTSD" and she "struggle[d] taking care of things." CP at 118. Hutchinson asserts this is the first time that Putka became aware that she suffered from these specific disabilities.

Hutchinson stated that during this conversation, Putka asked how he and his wife were supposed to feel with Hutchinson as their neighbor. Putka then asked, "[W]hat will you say when the papers call you?", referring to Hutchinson's city council candidacy. CP at 118. Putka then began to ask Hutchinson questions about her finances, inquiring if she knew how much the upkeep of the house would cost. Hutchinson alleges that Putka asked whether she currently paid rent, and

when she replied that she rented from her parents, he laughed. Putka asked about Hutchinson's income, and he asked how much Hutchinson paid for a down payment on the house. Hutchinson told Putka that she did not have a down payment because she received a VA loan. Putka shook his head and said, "'You know why lenders like using VA loans?'" and "'You didn't even have to do a down payment.'" CP at 119. At the end of this conversation, Putka said he accepted Hutchinson's apology.

The following day, July 10, Putka asked Hutchinson to meet again. At the meeting, Putka told Hutchinson that he and his wife no longer wanted to sell their house to Hutchinson. When Hutchinson asked why, Putka replied, "'[H]onestly Sara we don't trust you and we don't want to be neighbors with you.'" CP at 120. Putka then told Hutchinson, "'We are willing to work with you to stay in the [commercial] building . . . [i]f you back out of the house sale.'" *Id.* Hutchinson also alleges that Putka said he would not speak negatively about Hutchinson if she rescinded the house sale. Hutchinson asked if she could think about Putka's offer for a couple of days and Putka said that he wanted an answer right away. When Hutchinson stated that she could give Putka an answer by the afternoon, he said, "'What's the difference between then or now, it's an easy answer, you either have a place to work or you don't.'" *Id.* Putka eventually agreed that Hutchinson could get back to him that afternoon.

At some point after this conversation, Putka sought backup offers on the house. He received a backup offer, and it is unclear on this record whether the potential buyer was a veteran or planned to use a VA loan.

Immediately after her conversation with Putka, Hutchinson called her realtor who told her that Putka could not force her to back out of the purchase and sale agreement because the parties

5

had both signed the agreement. Hutchinson texted Putka that afternoon telling him that she needed to consult a lawyer. Putka told Hutchinson that he had mailed her a notice of default for her commercial lease. After exchanging several text messages, Putka ultimately stated,

> I remain open to working out a global deal involving both the house and you staying in the building. The notice I sent is to protect my interests in case we can't work it out. You have already broken the lease agreement by operating illegally. It doesn't matter what the nature of your business is going forward. We have plenty of grounds to legally evict you now, but are still willing to discuss settling this in a way for you to remain in the building.

CP at 122. Putka also talked with Hutchinson's lawyer at the time.

Several days later, on July 13, after several messages from Putka asking about Hutchinson's decision, Hutchinson replied that her massage therapist license was being expedited and that she would not talk about the house sale: "'that needs to be done through the [r]ealtors.'" CP at 123. When Hutchinson told Putka that she believed his actions were unfair because he was "'holding something over [her] head to get [her] to do something else,'" Putka replied, "'No, no, no, I feel that the house and commercial space are connected and one deal.'" *Id.* Putka then stated, "'You know the state can take comments and how would they feel finding out that you've been practicing for so long without a license.'" *Id.*

At some point during this process, Hutchinson went to the hospital because of the anxiety resolving her lapsed license was causing and her declining mental health.

The house sale closed on July 15 and Hutchinson took possession of the keys. After closing, Putka sent a notice of default and notice of eviction for Hutchinson's commercial lease and she moved out of the building. Putka reached out to a local publication, informing a reporter that Hutchinson had worked with an expired massage therapy license. Putka made a complaint about Hutchinson to the Washington State Department of Health. Putka also filed a case in small claims

court against Hutchinson to retain her security deposit. In addition, Hutchinson claims that Putka

spoke negatively about her to several people in the community. Putka responded that this was not

the first time he had publicly challenged city council candidates.

## II. PROCEDURAL HISTORY

In December 2022, Hutchinson brought a suit against Putka, claiming intentional infliction

of emotional distress; negligent infliction of emotional distress; tortious interference with business

expectancy; unlawful harassment; and discrimination under RCW 49.60.030, which prohibits

discrimination in real estate transactions, and RCW 49.60.2235, which prohibits coercion and

intimidation in real estate transactions due to disability or veteran status among other

characteristics. Only the claim for discrimination under RCW 49.60 is the subject of this appeal.

Putka brought a motion for summary judgment, and the trial court dismissed all of

Hutchinson's claims except the one for statutory discrimination. During the hearing, the trial court

orally stated that it would not dismiss the discrimination claim because,

> [W]e have action that was taken that was negative to [Hutchinson] in the form of her lease, in the form of complaints to the State. And what motivated that action, whether it was a good faith action to evict someone for having an unlawful business in a building; or, if that was motivated because of the status of the mental disability . . . that would seem to be more of a question for . . . a trier of fact.

Verbatim Rep. of Proc (VRP) at 38.

Putka then filed a motion in limine asking the trial court to limit Hutchinson from

presenting at trial any evidence of events that occurred after the closing of the house sale on July

15, or events that Hutchinson only knew about after closing. Putka argued that this evidence would

not be relevant to Hutchinson's statutory real estate discrimination claim because Putka's actions

after Hutchinson closed on the house could not have intimidated Hutchinson or coerced her into

rescinding the sale. The trial court ruled that the parties could only present evidence about actions taken after July 15, 2021, to the jury after demonstrating to the court that the evidence established a "link to the state of mind of [Putka] [presale] of the home." VRP at 58.

After this ruling and further discovery, including a second deposition of Hutchinson, Putka brought a second motion for summary judgment to dismiss the remaining discrimination claim. The motion included a new declaration from Putka and the new Hutchinson deposition. Putka argued that he did not ask Hutchinson to rescind the house sale because of her veteran status or disability; he asked her to rescind because Hutchinson was dishonest about her massage therapy license, so Putka did not trust her and did not want to be her neighbor. In her opposition to Putka's summary judgment motion, Hutchinson included several exhibits, including her own declarations and first deposition, which are consistent with the facts described above. In these documents, Hutchinson described her interactions with Putka regarding the house sale and Putka's reaction to a VFW sign in her business window. Hutchinson also attached a declaration from her lawyer stating that in his discussions with Putka about the purchase and sale agreement, Putka never mentioned Hutchinson's license and Putka's motivations seemed to be dislike or disgust for Hutchinson. The trial court granted Putka's motion for summary judgment, thereby dismissing the case.

After the oral ruling, Hutchinson again mentioned the VFW sign interaction, and the trial court concluded that this interaction was not sufficient to show that Putka's cited reason for asking Hutchinson to rescind—his distrust of her after finding about her expired license—was pretext for discrimination. The trial court concluded that the VFW sign interaction occurred in 2019, and the relationship between the parties continued without incident for years after. The trial court further

noted that the VFW sign indicated to Putka that Hutchinson may be a veteran, or at least supported veterans, and Putka still initially agreed to sell Hutchinson the house with that knowledge.

Hutchinson filed a motion for reconsideration of the trial court's order. As part of this motion for reconsideration, Hutchinson claimed that the trial court should consider new evidence in the form of live testimony from a new witness. According to Hutchinson, this proposed witness, who is also a disabled veteran and who ran against Putka's wife in a local election, would testify that Putka confronted the witness outside of city council chambers and threatened to expose her previous DUI if she did not drop out of the city council race. Hutchinson acknowledged that Putka said he confronted the witness because he "believed she wasn't qualified, and the public had the right to know her criminal history." CP at 392. However, Hutchinson claimed this reasoning was pretext for discrimination. Hutchinson did not present a signed declaration from the new witness; Hutchinson merely described what she believed the witness's testimony would be.

The trial court denied Hutchinson's motion for reconsideration without allowing testimony from the new witness. Hutchinson appeals this denial.

## ANALYSIS

### I. SECOND SUMMARY JUDGMENT MOTION

Hutchinson argues that the trial court erred by considering Putka's second summary judgment motion because the motion did not present any new facts. However, Putka did present new evidence. In his second summary judgment motion, Putka included a new declaration and a deposition of Hutchinson taken after his first summary judgment motion. The trial court did not err by considering Putka's second summary judgment motion.

## II. Claims Under RCW 49.60

Hutchinson argues that she brought claims under the entire RCW 49.60 chapter, not just RCW 49.60.2235. Specifically, Hutchinson argues that the trial court should have also considered RCW 49.60.030, 49.60.040, and 49.60.222.

Under RCW 49.60.2235, it is "an unlawful practice to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of [them] having exercised or enjoyed . . . rights regarding real estate transactions secured by RCW 49.60.030, 49.60.040, and 49.60.222 through 49.60.224." RCW 49.60.030(1)(c) outlines the general "right to be free from discrimination" because of "honorably discharged veteran or military status" or "the presence of any sensory, mental, or physical disability" when engaging in real estate transactions. RCW 49.60.040 provides definitions for the chapter. Notably, the definition for "real estate transaction" includes purchases and leases of real property. RCW 49.60.040(22). And RCW 49.60.222 provides other more specific claims for unfair practices regarding discrimination in real estate transactions.

Hutchinson's amended complaint lists only RCW 49.60.030 and RCW 49.60.2235. Regarding Putka's actions, the complaint states that he "attempted to coerce and intimidate [Hutchinson] into backing out of the sale of [Putka's residential property] after [Hutchinson] had already fulfilled [her] obligations under the [purchase and sale agreement] due to [her] veteran status, disabilities, and/or personal affairs." CP at 25. Hutchinson's opposition to Putka's first summary judgment motion again cites RCW 49.60.2235 and specifically states that Putka "coerced, intimidated, and interfered with" Hutchinson's purchase of Putka's house. CP at 111. Hutchinson's opposition to Putka's second summary judgment motion repeats the same language and also does not cite any additional provisions of RCW 49.60.

Under RAP 2.5(a), an appellate court may refuse to review errors that are brought for the first time on appeal. At the trial court level, Hutchinson only substantively argued that Putka violated RCW 49.60.2235 and RCW 49.60.030 by discriminating against her in a real estate transaction, and no other sections of RCW 49.60.[1] Because Hutchinson mentions other sections of RCW 49.60 only on appeal, the trial court did not err by only analyzing Hutchinson's claim as one for real estate discrimination under RCW 49.60.030 and RCW 49.60.2235. Especially in light of the limited nature of the discrimination claim brought in Hutchinson's amended complaint, we need not analyze her claims under other sections of RCW 49.60, nor do we need to address any claim other than the one for real estate discrimination.

### III. CONSIDERATION OF EVIDENCE AFTER HOUSE SALE CLOSING

Putka argues that Hutchinson's complaint only referenced discrimination during the sale of Putka's house and not the commercial lease agreement between Putka and Hutchinson. Putka thus contends that, applying the trial court's order in limine, any events that occurred after the closing of the house sale should not be considered because they could not have been coercive or intimidating regarding the house sale.

Putka mischaracterizes the trial court's order in limine regarding evidence of actions after July 15. The trial court stated that the parties must get the trial court's approval before presenting evidence about actions taken after July 15. Specifically, the parties were required to demonstrate to the trial court that the post-July 15 actions were somehow linked to Putka's state of mind before the closing of the house sale.

---

[1] Because the definitions outlined in RCW 49.60.040 apply to the whole chapter and aid us in applying RCW 49.60.030 and RCW 49.60.2235, we consider them even if Hutchinson did not cite them below.

Under RAP 9.12 we consider only evidence and issues brought to the attention of the trial court. But there is nothing in the record that suggests the trial court did not consider the totality of the facts—including those from after July 15—when ruling on Putka's second summary judgment motion. Putka himself insisted the sale of the Putka's residential home and the ongoing commercial lease were transactions he wanted to resolve collectively. Thus, Putka's actions regarding the commercial lease agreement, as they are tied to his allegedly coercive comments telling Hutchinson to rescind the house sale, can be considered on appeal.

Finally, Hutchinson seems to argue on appeal that Putka's actions evicting her from the commercial building, reporting her lapsed license to the Department of Health, and discussing her lapsed license with a local newspaper reporter were themselves discriminatory actions. As discussed above, in Hutchinson's amended complaint and in her arguments to the court below, she focused on Putka's attempts to get her to rescind the purchase and sale agreement for the house as the basis for her real estate discrimination claim. These other actions were not sufficiently argued below as independent bases for her discrimination and, although we can consider evidence relating to these allegations, we decline to address them as a separate basis for Hutchinson's discrimination claim. RAP 2.5; RAP 9.12 (limiting issues to be considered on appeal to those issues that the trial court considered).

## IV. DISCRIMINATION IN A REAL ESTATE TRANSACTION

Hutchinson argues that the trial court erred by granting summary judgment to Putka on her statutory real estate discrimination claim. Hutchinson contends that there is a genuine issue of material fact as to whether Putka coerced and intimidated Hutchinson during the house sale

because of her disabled veteran status. Hutchinson asserts that the trial court made improper inferences about whether Putka's actions were discriminatory that should have been left to a jury.

We review a trial court's dismissal on summary judgment de novo. *Mikkelsen*, 189 Wn.2d at 526. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing CR 56(c)). When reviewing a grant of summary judgment, we consider all facts and make all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when reasonable minds could disagree on the facts controlling the outcome of the case. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371 (2020).

"The party moving for summary judgment 'has the initial burden to show there is no genuine issue of material fact.'" *Mackey*, 12 Wn. App. 2d at 569 (quoting *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017)). "A moving defendant can meet this burden by establishing that there is a lack of evidence to support the plaintiff's claim." *Id.* If the defendant makes such a showing, "the burden shifts to the plaintiff to present specific facts that show a genuine issue of material fact." *Id.* We will grant summary judgment where a plaintiff does not present sufficient evidence to establish a question of fact about an essential element of their claim. *Id.*

Under RCW 49.60.2235, a person may not "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of [them] having exercised or enjoyed . . . rights regarding real estate transactions." Similarly, under RCW 49.60.030(1)(c) a person has a right to be free from discrimination in real estate transactions. Where there is not an established standard for establishing discrimination in a certain context, we will often rely on the standards

from employment discrimination cases. *Tafoya v. Wash. State Hum. Rts. Comm'n*, 177 Wn. App. 216, 224, 311 P.3d 70 (2013).

Direct evidence of discriminatory intent is rare, so "plaintiffs may rely on circumstantial, indirect, and inferential evidence to establish discriminatory action." *Mikkelsen*, 189 Wn.2d at 526. Because intentional discrimination is difficult to prove, Washington has adopted the three step evidentiary burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Mackey*, 12 Wn. App. 2d at 571.

First, the plaintiff must make a prima facie case of discrimination, which creates a rebuttable presumption of discrimination. *Id.*

Second, the burden shifts to the defendant, who must "'articulate a legitimate, nondiscriminatory reason'" for their alleged actions. *Id.* (internal quotation marks omitted) (quoting *Mikkelsen*, 189 Wn.2d at 527). The defendant "is not required to persuade the court that it actually was motivated by the nondiscriminatory reason," only that the defendant's evidence, "if taken as true would permit the conclusion that there was a nondiscriminatory reason." *Id.* at 571-72. In other words, this is a burden of production, not a burden of persuasion. *Id.*

Third, if the defendant meets this burden, the plaintiff must produce sufficient evidence showing that the defendant's alleged nondiscriminatory reason was a "pretext." *Id.* at 572. This prong may be satisfied "'by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the [defendant's] stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the [defendant].'" *Mikkelsen*, 189 Wn.2d at 527 (quoting *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446-47, 334 P.3d 541 (2014)).

Because it is difficult to prove discriminatory motivation, summary judgment is rarely appropriate in discrimination cases. *Mackey*, 12 Wn. App. 2d at 572. "'When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation.'" *Id.* (internal quotation marks omitted) (quoting *Mikkelsen*, 189 Wn.2d at 528). To overcome summary judgment, the plaintiff must "show only that a reasonable jury could find that discrimination was a substantial factor in the [defendant's] adverse employment action." *Mikkelsen*, 189 Wn.2d at 528. However, a plaintiff alleging discrimination must do more than express an opinion or make conclusory statements. *Crabtree v. Jefferson County Pub. Hosp. Dist. No. 2*, 20 Wn. App. 2d 493, 510, 500 P.3d 203 (2021). "Instead, the facts must be specific and material." *Id.*

A.     Prima Facie Case

First, Hutchinson must present a prima facie case of discriminatory coercion or intimidation related to a real estate transaction under RCW 49.60.2235. The parties concede that Hutchinson is part of a statutorily protected class as a disabled veteran. The parties also agree that a violation of RCW 49.60.2235 does not require a discriminatory outcome, so Putka need not have succeeded in blocking the sale of the house to Hutchinson.

Putka argues that he did not coerce or intimidate Hutchinson and instead attempted to negotiate with her by proposing a "global deal" for Hutchinson to stay in the commercial building if she rescinded the agreement for the house sale. Br. of Resp't at 25. Taking all facts in the light most favorable to Hutchinson, Hutchinson presents a prima facie case that Putka attempted to coerce or intimidate her into rescinding the house sale. Putka threatened Hutchinson's commercial

lease and threatened to expose her license status to the public if she did not back out of the purchase and sale agreement for the house.

Hutchinson also presents a prima facie case that this alleged coercion was discriminatory. Putka asked Hutchinson to rescind the house sale soon after he learned about her specific disabilities, anxiety, depression, and PTSD. This temporal connection is enough to meet Hutchinson's initial burden to show discriminatory intent. *See Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 415-16, 430 P.3d 229 (2018) (discussing a similar analysis in a retaliation context).

B.      Legitimate, Nondiscriminatory Reason

Because Hutchinson has presented a prima facie case of discrimination, the burden shifts to Putka, who must articulate a legitimate, nondiscriminatory reason for asking Hutchinson to rescind the house sale.

Putka claims that he did not discriminate against Hutchinson because of her disability or veteran status. Putka instead contends that he asked Hutchinson to rescind the house sale because he did not trust her after learning that she practiced in his commercial building without a valid massage therapy license, and she lied to him when he asked her about it.

Here, Putka has met his burden to present a legitimate, non-discriminatory reason for his actions. Putka knew that Hutchinson was a disabled veteran at least a month before he confronted her about the massage therapy license on July 8. Before that date, Putka did not exhibit discriminatory behaviors toward Hutchinson regarding the sale of the house. Putka said that he and his wife were excited to have Hutchinson as a buyer. Putka also signed the purchase and sale agreement, and he offered to include a piano and patio furniture in the sale. Putka's behavior toward Hutchinson changed sharply upon finding out about the expired massage therapy license

16

on July 8, and he asked Hutchinson to rescind the house sale only two days later. Although Putka also learned about Hutchinson's specific disability during this time, his stated reasons meet the burden of production.

C.    Pretext and Discrimination as Substantial Factor

The burden then shifts to Hutchinson to offer evidence creating a genuine issue of material fact: either that Putka's proffered reasons are pretextual or that even if Putka's reason is legitimate, discrimination was a substantial factor motivating his actions regarding the house sale. *Mikkelsen*, 189 Wn.2d at 527.

Hutchinson does not present direct evidence that discrimination was *the* reason for Putka's attempts to coerce her into backing out of the purchase and sale agreement. Hutchinson does not deny that she had an expired massage therapy license or that she initially lied to Putka about submitting the license renewal paperwork. She submits no evidence showing that the expired massage therapy license and subsequent dishonesty were not reasons for Putka's actions regarding the house sale.

Even if Hutchinson cannot show that Putka's reasons for asking her to rescind the house sale were pretextual, she can still satisfy her burden under the third step of the *McDonnell Douglas* framework by showing that discrimination was nevertheless a substantial motivating factor for his actions. *See Mikkelsen*, 189 Wn.2d at 527.

On the one hand, Putka learned about the specific nature of Hutchinson's disabilities on July 9, and he asked her to rescind the house sale on July 10, a day later. Putka did not ask Hutchinson to rescind the house sale on either July 8, when he first spoke to Hutchinson about the expired lease, or July 9, before he knew about her mental illnesses. This establishes at minimum a

17

temporal relationship between Putka's knowledge of Hutchinson's specific disability and his coercive actions regarding the house sale. Hutchinson also submitted a declaration from her attorney at the time who explained that Putka did not raise the issue of her lapsed license, but rather conveyed his dislike and disgust for Hutchinson as his reason for trying to convince her not to go through with the home sale.

On the other hand, Putka's comments and actions on and after July 9 were consistent with his explanation that he asked Hutchinson to rescind the house sale because he did not trust her after finding out that she lacked a valid massage therapy license and, thus, he did not want to be her neighbor. And his actions after July 15 exposing her dishonesty are partially explained by his support for Hutchinson's opponent in the city council election.

In *Mackey*, this court upheld a dismissal on summary judgment where the defendant offered a legitimate, nondiscriminatory reason for the plaintiff's employment discharge, and the plaintiff failed to present any evidence of discrimination except a temporal relationship between the discharge and a complaint about a coworker's comments regarding her disabilities. 12 Wn. App. 2d at 583-85. The mere fact that Putka asked Hutchinson to rescind the house sale soon after learning about her specific disabilities, given that this timeline also aligns with Putka's proffered nondiscriminatory reasons, is not sufficient to create a genuine dispute of material fact about Putka's discriminatory purpose on its own under *Mackey*.

Hutchinson also relies on her attorney's conversation with Putka about rescinding the purchase and sale agreement and Putka's failure to mention Hutchinson's lapsed license. But the declaration merely reflected that Putka disliked Hutchinson, perhaps strongly, which is also consistent with his explanation of his motivations.

Hutchinson presents evidence that Putka asked her to remove a VFW sign from her business's window in 2019, and she argues that this demonstrates a pattern of discrimination. She also contends that Hutchinson denigrated her VA loan. But as the trial court noted, the VFW sign may have signaled to Putka that Hutchinson was a veteran and Putka still agreed to sell his house to Hutchinson. And Hutchinson acknowledges that Putka knew she was a disabled veteran and that she was using a VA loan, but did not exhibit discriminatory behavior regarding the house sale until July 9. Even taken in the light most favorable to Hutchinson, this evidence does not create a genuine issue of material fact about Putka's discriminatory intent regarding the real estate transaction at issue here.

Hutchinson also argues that before the closing of the house sale, Putka sought back up offers from buyers not using VA loans, which demonstrates discriminatory intent. Putka concedes that he sought backup offers on the house after he learned about Hutchinson's expired license, but there is no evidence on this record that the buyer he found did not use a VA loan or that he only sought buyers without VA loans.

Hutchinson produces no other specific evidence of Putka's discrimination against veterans or disabled people, only conclusory claims about Putka's intentions. We therefore affirm the trial court's summary judgment for Putka.

## V. NEW EVIDENCE AT RECONSIDERATION

Hutchinson contends that the trial court erred by not allowing live testimony from a new witness who allegedly could demonstrate a pattern of discrimination to support her motion for reconsideration. But Hutchinson provided no declaration or deposition testimony from the alleged witness, and the mere assurance that a witness could testify in a certain way is not enough to

support reconsideration or create a genuine issue of material fact. Thus, the trial court did not err when considering and denying reconsideration.

## ATTORNEY FEES

Putka requests attorney fees under RAP 18.1(a), which allows us to grant attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 49.60.340(6) states that in a civil action under RCW 49.60.225, a court may, in its discretion, grant reasonable attorney fees to the prevailing party.

We decline to award attorney fees in this appeal.

## CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

VELJACIC, A.C.J.

20